EMILY B. VON HESSE, as Administratrix, etc., Respondent, *v.*
THEODORA EDITH MACKAYE, Impleaded with CHRISTIAN
VON HESSE, as Executor of Last Will and Testament of
JAMES MACKAYE, Appellant.

The reservation by the settlor of a trust of a right in himself to revoke the
trust does not work its destruction, where the rights of the settlor's cred-
itors are not involved.

In an action to determine the rights of adverse claimants to certain railroad
bonds in the hands of plaintiff, as administrator of the estate of W., the
following facts appeared: M., in his ·lifetime, delivered the bonds in
question to W., the latter giving a receipt therefor, which stated that he
held them in trust for T., an adopted daughter of M., and for her sole bene-
fit. "Said bonds for and during his life to be subject to the order" of M.
M. frequently thereafter declared that he intended the transfer to be so
complete that, in case "any more blackmail suits" were brought against
him, W. could swear that he had no property of M. in his hands. M.,
subsequent to the delivery, directed W. to effect a loan for him, and
use two of the bonds as security therefor, which was done. *Held,* that
·a valid trust was created, and that the bonds remaining in the hands of
W. upon the death of M. belonged to T.

Reported below, 62 Hun, 458.

(Argued October 25, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made December 31, 1891, which affirmed a judgment in favor
of the defendant Theodora Edith MacKaye, entered upon a
decision of the court on trial at Special Term.

This action was in the nature of a bill of interpleader
brought by plaintiff, as administrator of William H. MacKaye,
deceased, to determine the right to seven coupon Kansas
Pacific bonds for $1,000 each, as between Theodora Edith
MacKaye, an adopted infant daughter of James MacKaye,
deceased, and the executor of his will. These bonds were
found by plaintiff among the papers of the decedent.

Said bonds with three other similar ones were delivered by
said James MacKaye to his son William who executed to him
the following receipt:

"NEW YORK, *January* 21, 1887.

"Received of my father, James MacKaye, ten Kansas
Pacific bonds of one thousand dollars each, to be held by me

in trust for his adopted daughter Theodora Edith MacKaye, and for her sole benefit and behoof, said bonds for and during his life to be subject to the order of my father.

" W. H. MACKAYE."

On April 1, 1887, the deceased directed William to borrow for him $2,000 on two of these bonds, which was done and an acknowledgment of this order was sent to William by his father.    The acknowledgment was written at the bottom of a copy of the trust receipt in the following form:

"April 1st, 1887, I directed my son, W. H. MacKaye, to borrow for me $2,000 and to use as security therefor, two of the above-mentioned bonds.

" J. MACKAYE."

In October, 1887, James MacKaye wrote to his friend, Mr. Lowrey, proposing that his wife, his son William and Mr. Lowrey should be put in possession as trustees of certain bonds including "those now held by William in trust for Edith." On December 21, 1887, in a letter to William inclosing the acknowledgment of the order as to the $2,000 loan, he says: "My principal object in putting these bonds in trust for Edith, was to enable you in case of any more blackmail suits to swear that you had no property in your hands belonging to me."

On January 11, 1888, he wrote to William referring to the last letter of his to William's anxiety about "responsibility under the trust," stating that his power of disposition "is to be taken as a condition so far modifying it."    Adding this, "I will send you another form of receipt so that you shall be relieved of all responsibility under the trust.    I mean I will so draw the receipt so that, so far as I choose, during my life, I may withdraw any portion or all of the bonds from under the trust."

On the eighteenth of the same month he wrote a letter in which after referring again to his former explanation "why I put the ten bonds in your hands in trust for Edith," he says: "Of course I never meant to part with the right to dispose of the bonds otherwise during my life."    *    *    *    "But as you seem to be worried about the receipt you gave me I return

it to you, but let the understanding between us be, that at all times, any portion of the bonds that remain in your hands undisposed of by my order or request, you hold for the benefit of Edith and as her guardian and trustee, so that you can at all times swear that you have no property of mine in your hands."

James MacKaye died in Paris in April, 1888.

*George H. Starr* for appellant. There was no such absolute and complete present delivery or gift to a trustee, made or intended to be made, as is essential to create a valid trust. (*Martin* v. *Funk*, 75 N. Y. 137; *Milroy* v. *Lord*, 4 De G., F. & J. 264; *Beaver* v. *Beaver*, 117 N. Y. 429; *Young* v. *Young*, 80 id. 435.) There was no valid gift or gift in trust *inter vivos*, because no title or interest in any of the property was to vest legally, or beneficially, until the death of the settlor. (*In re Dietz*, 50 N. Y. 93; *Nutt* v. *Morse*, 142 Mass. 1; *Williams* v. *Guile*, 117 N. Y. 347; *Basket* v. *Hassell*, 107 U. S. 602.) The attempted transfer was not valid, as a gift, or as a gift in trust, *causa mortis*. (*Williams* v. *Guile*, 117 N. Y. 348; *Riddin* v. *Thrall*, 125 id. 579; *Basket* v. *Thrall*, 107 U. S. 662.) As there was no defined or certain present estate or interest set off to Edith, or to William for her use, the transfer is void for uncertainty. (*Young* v. *Young*, 80 N. Y. 431.)

*Chas. F. Stone* for respondent. To constitute a trust of personal property it is sufficient that some person be designated " trustee " (by the use of that word) of a designated fund, for a designated person. It is not necessary to notify the beneficiary or to use any further words. (*Martin* v. *Funk*, 75 N. Y. 134; *Macy* v. *Williams*, 125 id. 787.) The intent of the creator of this trust, expressed at the time of the delivery, between himself and the trustee, in the receipt dated January 21, 1887, and reiterated afterwards by him to the trustee, was to divest himself wholly of the title, ownership and possession which he then had of these coupon bonds, retaining in lieu thereof nothing but the power of disposition during his life.

The right of property was completely alienated and vested in the trustee. A life power of disposition was contemporaneously created and retained. (*Cutting* v. *Cutting*, 86 N. Y. 522; *Hutton* v. *Benkard*, 92 id. 304, 305.) The reserved power did not invalidate the trust, or convert it into a bailment. (*Gilman* v. *McArdle*, 99 N. Y. 451, 457; 1 Perry on Trusts, § 104; *Jones* v. *Clifton*, 101 U. S. 229; *Davis* v. *Ney*, 125 Mass. 190; *VanCott* v. *Prentiss*, 104 N. Y. 45.) The trust expressed in the letter of January 18, 1888, remains unaffected by the reserved power of disposition, and the son was thereby made guardian and trustee for this infant precisely as if there had been no reservation at all. (*Lines* v. *Lines*, 24 Am. St. R. 490.) The power of revocation, under our Revised Statutes, rendered the trust of no validity as against creditors having " lawful demands," to satisfy which the revocable fund might be necessary. But there are here, so far as appears, no creditors. If there were any, the invalidity as to them would not render the trust invalid in favor of the grantor or against the beneficiary. (*Gilman* v. *McArdle*, 99 N. Y. 457; *Lore* v. *Dierkes*, 16 Abb. [N. C.] 47, 54.) There is no uncertainty as regards the rights of the beneficiary of this trust, or as to its extent, and the instruments creating it are not testamentary. (*Gilman* v. *McArdle*, 99 N. Y. 451, 459.) An executor cannot defeat a trust and sustain his title to the trust property, by proving the declarations of the deceased in his own interest, or in that of others, made by him after the creation of the trust. (*Greaves* v. *McArdle*, 15 Hun, 367–370; *Lowery* v. *Erskine*, 113 N. Y. 52, 60, 61; *Miles* v. *Sackett*, 3 How. Pr. 145; *Anderson* v. *Thompson*, 38 Hun, 394.) The law required that the fund should be adjudged to be payable to a trustee for the infant, to be appointed by the Supreme Court under the Statute. (Laws of 1882, chap. 185; 99 N. Y. 117.)

FINCH, J. The validity of the trust for Edith is contested, not by creditors, but by the personal representatives of the settlor; and the evidence drives us to a choice between two

alternatives. We must regard the arrangement either as a trust for her benefit with a power of revocation reserved, or as a fraudulent scheme to cover the settlor's real ownership with the semblance of an outstanding title. Of course, we are not justified in the inference of a fraud or a falsehood when an honest explanation is possible, and should not turn an apparent trust into a sham except under the stress of a clear necessity.

I do not think the alternative of a meditated fraud is forced upon us by the proof. There was a delivery of the bonds to William Mackaye, by Colonel Mackaye, with the intent of vesting in the former the full and absolute legal title. Repeatedly, the latter declared, that he meant the transfer to be of such a character and so complete that William could swear that he had no property of the settlor in his hands. We are not at liberty to suppose that the Colonel intended to have his son swear to a lie if a question of title should arise. We are bound to believe that the settlor intended a transfer which actually and in truth took the title out of him, and so effectually that the trustee could say under oath that the settlor had wholly parted with his ownership of the bonds. The character of the transfer, as originally made, is evidenced by the receipt which William gave, and which accords with his father's declared intent. It is in these words: "Rec'd of my father, James Mackaye, ten Kansas Pacific bonds of one thousand dollars each, to be held by me in trust for his adopted daughter, Theodora Edith Mackaye, and for her sole benefit and behoof; said bonds, for and during his life, to be subject to the order of my father." In a letter written at a later date, the Colonel gives his reasons for "putting the bonds in trust for Edith," as he had already and previously explained. It was to ward off any more blackmail suits, by so divesting himself of this property in his son's hands, as to take away that temptation to begin them. This was one motive for instituting the trust. It may be conceded that it was the primary and principal reason operating upon the settlor's mind, and that a provision for Edith was subordinate and secondary.

And yet each motive separately and both combined, required an actual trust for her benefit, and not a mere agency disguised as a trust. There was a reservation of a control in the settlor, equivalent to a power of revocation, and the existence of that power, and the use made of it, furnish the principal material for the argument of the appellant. Undoubtedly the settlor did mean to reserve a power of revocation. The bonds were to be subject to his order; he speaks of withdrawing them from the trust; of retaining control over them; of a right to divert them to other uses; but at the same time invariably declares that so far as he does not exercise that control, so far the trust shall stand and remain for the benefit of Edith. He did withdraw some of the bonds from the trust, and so *pro tanto* revoke it; but few things are better settled than that the reservation of such a power is entirely consistent with the trust, and does not work its destruction where the rights of creditors are not involved. It is true that the authority reserved over the fund is expressed in such terms as to admit of the contention that instead of a gift with a power of revocation, there was no gift at all, but merely an agency. That theory falls very far short of explaining all the facts, and fastens upon the settlor a purely fraudulent purpose, while the construction of an intended trust for the benefit of Edith, with a power of revocation partially in fact exercised, and having, as the chief motive of its creation, a dread of attempted blackmail, harmonizes all the facts and incidents which appear upon the record, and consistently with good faith and honest intention. It is strengthened, also, by Colonel Mackaye's later correspondence with his friend and attorney, in which he recognizes these bonds as already held in trust for Edith, while planning another and more extensive one for her benefit. Upon a consideration of all the facts, we are inclined to agree with the courts below, that a valid trust was created and sufficiently proved.

The judgment should be affirmed, with costs.

All concur, except PECKHAM, J., not voting.

Judgment affirmed.