FRANKLIN D. LOCKE et al., as Executors, etc., Respondents, *v.*
THE FARMERS' LOAN AND TRUST COMPANY et al., Respond-
ents, MAGDALENA RINGS, Individually and as Guardian, et
al., Appellants.

A trust of personal property may be effectually framed in which the
author of the trust is himself the trustee.

S., plaintiffs' testator, in his lifetime, executed an instrument in triplicate
which stated that he was the owner of 400 shares of the stock of a cor-
poration named, evidenced by four certificates, the numbers of which
were given ; that he did thereby " dedicate and set apart * * * in
whose possession soever the said several certificates of stock may come
without actual transfer," all the income and dividends thereafter to
accrue thereon, in trust to himself or to any custodian in whose hands
the said certificates might be deposited by him, or by his order, for the
uses and purposes specified. These were that the net income and divi-
dends, as received from time to time, should be apportioned into ten
equal parts, three to be paid over to the use of M., three to the use of A.,
two to be paid to H. during life, and two to M. M. during life. In case of
the decease or marriage of M. or the decease of A., it was provided that
" then the portion so allotted to such person shall, from and after the
happening of such event, be paid over" to the use of a religious society
named, and "the portion allotted to the other shall, after her decease"
or marriage, if it be M., be paid over to the use of a charitable institution
named. At the termination of the life interests of H. and M. M., "the
portion allotted" to each, it was provided, should also go to a charitable
institution named. A power of revocation was .reserved. One of the
triplicates, with the certificates of the stock in a sealed envelope, S.
deposited in his box in a deposit company. Upon the envelope was
indorsed in the handwriting of S. the words, "Declaration of trust with
certificates * * * belonging to trust," following which was a
description of the certificates and a statement that a "duplicate declara-
tion of trust had been filed with the beneficiaries" and with another per-
son named ; also a further memorandum directed to a person named,
"for and in behalf of the within-named beneficiaries," as follows : "In
case of my decease please see that the inclosed trust is faithfully carried
out." The provisions of the instrument were carried out until the death
of S., about four years after its execution. In his will S. recited the
deposit of "the deed of trust," and directed his executors to carry out
its provisions. *Held*, that a good and valid declaration of trust was
made, and upon its execution the settlor held the legal title to the stock
in trust for those to whom he had given the income; that four separate
and several trusts were created, and each life tenant took independent

of the others; that each trust terminated upon the death of the life beneficiary and then the entire interest and absolute ownership of the trust fund went to the corporation named as the ultimate beneficiary.

*Locke* v. *Rings* (66 Hun, 428), reversed.

(Argued October 25, 1893 ; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 12, 1893, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiffs, as excutors of the last will and testament of Jonathan Scoville, deceased, for a construction of the will, and to obtain a determination of the court as to the validity and operation of certain alleged trusts.

The instrument under which the questions presented arose, is as follows :

" Be it remembered, that I, Jonathan Scoville, of the city of Buffalo, county of Erie, and state of New York, owner of four hundred shares of the capital stock of the New York and Harlem Railroad Company, of fifty dollars each, and evidenced by four certain certificates thereon, numbered 21815, 21816, 21817 and 21818, respectively, have, and do hereby dedicate and set apart, from and after the date hereof, in whose possession soever the said several certificates of stock may come without actual transfer, all and singular the net income and dividends hereafter to accrue and become due and receivable from time to time thereon, in trust to myself, or to any custodian in whose hands the said certificates of stock may be deposited by me or by my order for the like purpose, and to and for the following uses and purposes, that is to say :

" The said net income or dividends of the said stock, as often as received from time to time, shall be apportioned into ten equal parts, three of which parts shall be paid over to the use and benefit of Magdalena Rings, of Buffalo, N. Y. ; three parts thereof shall be paid over to the use and benefit of Anna M. Rings, of the same place ; two parts thereof shall be paid

to Henry C. Rings, of the same place, for and during his natural life, and two parts thereof shall be paid over to Minnie M. Rings, of the same place, for and during her natural life, provided, however, that in case of the decease or marriage of the said Magdalena Rings, or the decease of the said Anna M. Rings, whichever event shall first happen, then the portion so allotted to such person shall, from and after the happening of such event, be paid over to the use and benefit of the St. John's Episcopal Church and Society, of the town of Salisbury, state of Connecticut, and the portion allotted to the other shall, after her decease (or marriage, if it be the said Magdalena) be paid over to the use and benefit of the Buffalo Orphan Asylum (Protestant) of the city of Buffalo, and upon the decease of the said Henry C. Rings, the portion so allotted to him shall thenceforth be paid to the use and benefit of the St. Vincent's Female Asylum of the city of Buffalo; and upon the decease of the said Minnie M. Rings, the portion so allotted to her shall be thereafter paid to the use and benefit of the Buffalo Hospital of the Sisters of Charity; and it is hereby expressly provided, from and out of the said income so apportioned to the said Magdalena and Anna M. Rings, they shall each bear and pay an equal portion of the taxes, repairs and insurance of the premises this day leased to the beneficiaries herein named.

"For the purposes of this instrument, the said Magdalena Rings shall be considered the guardian of the property and rights of the said Henry C. Rings and Minnie M. Rings during minority; and upon her marriage or decease, then the said Anna M. Rings, if surviving and unmarried, shall be deemed such guardian, otherwise a guardian for the said minors shall be duly appointed.

"The right to cancel or otherwise modify this instrument at any and all times is hereby expressly reserved to me, notwithstanding any provision herein contained.

"Witness my hand, this fifth day of January, A. D. 1887.
                              "JONATHAN SCOVILLE."

The further facts, so far as material, are stated in the opinion.

*John G. Milburn* for appellants. The written instrument dated January 5, 1887, and the acts of Mr. Scoville in connection with it, impressed the 400 shares of the capital stock of the New York and Harlem Railroad Company with the trusts therein mentioned. (*Martin* v. *Funk,* 75 N. Y. 134; *Barry* v. *Lambert,* 98 id. 306; *Willis* v. *Smyth,* 91 id. 297; *Mabie* v. *Bailey,* 95 id. 206; *Van Cott* v. *Prentice,* 104 id. 45; *McPherson* v. *Rollins,* 107 id. 316; *Von Hesse* v. *McKaye,* 136 id. 114; *McArthur* v. *Gordon,* 126 id. 597; *Fagan* v. *Gurney,* 14 N. Y. Wkly. Dig. 468; *Rosenburg* v. *Rosenburg,* 40 Hun, 91; *Slone* v. *Hackett,* 12 Gray, 227; *Beaver* v. *Beaver,* 117 N. Y. 421.) The trusts in favor of the life beneficiaries do not suspend the absolute ownership of the shares of stock beyond two lives in being, and are valid. (*Vanderpool* v. *Loew,* 112 N. Y. 177, 180; *Schermerhorn* v. *Cotting,* 131 id. 48; *Savage* v. *Burnham,* 17 id. 571; *Underwood* v. *Curtis,* 127 id. 523; *Culross* v. *Gibbons,* 130 id. 447; *Cross* v. *U. S. T. Co.,* 131 id. 338, 339; *Kennedy* v. *Hoy,* 105 id. 134; *In re Verplanck,* 91 id. 439; *Wells* v. *Wells,* 88 id. 383.) If the trusts we have been considering are for any reason inoperative, a valid trust in favor of the Rings is created by the 6th article of Mr. Scoville's will. (*Booth* v. *Baptist Church,* 126 N. Y. 247; *Tonnele* v. *Hall,* 4 id. 140.) The trusts in favor of the institutions are valid. (*Earl* v. *Grim,* 1 Johns. Ch. 494; *Wells* v. *Wells,* 88 N. Y. 331; *Garrett* v. *Rex,* 6 Watts, 14; *Van Rensselaer* v. *Dunken,* 24 Penn. St. 252; *Green* v. *Williams,* 15 R. I. 251; *Adams* v. *Perry,* 43 N. Y. 487; *Coltman* v. *Grace,* 112 id. 299; *Schermerhorn* v. *Cotting,* 131 id. 58; *Greene* v. *Greene,* 125 id. 512; *Everitt* v. *Everitt,* 29 id. 39.)

*Sherman Evarts* for infant defendants Scoville, respondents. The instrument of January 5, 1887, is not incorporated in the will as an integral part thereof. (*Langdon* v. *Astor,* 16 N.

Y. 26; *Williams* v. *Freeman*, 83 id. 569; *In re O'Neil*, 91 id. 523; *Booth* v. *Baptist Church*, 126 id. 215.) No valid trust was created under the instrument of January 5, 1887. (*Martin* v. *Funk*, 75 N. Y. 137; *Barry* v. *Lambert*, 98 id. 306; *Stone* v. *Hackett*, 12 Gray, 227; *Ellison* v. *Ellison*, 6 Ves. 656, 662; *Kekewich* v. *Manning*, 1 DeG., M. & G. 176; *Milroy* v. *Lord*, 4 DeG., F. & J. 264; *Young* v. *Young*, 80 N. Y. 422; *Richards* v. *Delbridge*, L. R. [18 Eq. Cas.] 11; *Warriner* v. *Rogers*, L. R. [16 Eq.] 340; Pom. Eq. Juris. § 996; Perry on Trusts, § 102; *Tufts* v. *Tufts*, 3 W. & M. 508–510; *McArthur* v. *Gordon*, 126 N. Y. 597; *Fagan* v. *Gurney*, 14 N. Y. Wkly. Dig. 468; *Rosenburg* v. *Rosenburg*, 40 Hun, 91; *Cottman* v. *Grace*, 112 N. Y. 299; *Adams* v. *Perry*, 43 id. 487.)

FINCH, J. The testator in his lifetime executed a formal declaration of trust relating to four hundred shares of the capital stock of the New York and Harlem R. R. Company standing in his name on the books of that corporation, and for which he held four certificates. By the terms of the trust the net income and dividends of the stock was to be apportioned into ten equal parts, three of which were to be paid over to the use and benefit of Magdalena Rings, three to the use of Anna Rings, two to the use of Henry Rings for the term of his natural life, and two to Minnie Rings until her decease. The deed further provided that upon the death or marriage of Magdalena, or the decease of Anna, whichever of the three events should first happen, "the portion allotted" to such person should be paid over to the use and benefit of the St. John's Episcopal Church and Society of Salisbury, Connecticut; and "the portion allotted" to the other of the two should, upon the happening of the prescribed event, go to the Buffalo Orphan Asylum. In like manner, at the termination of the life interests of Henry and Minnie, "the portion allotted" to the former was to go to the St. Vincent's Female Asylum of the city of Buffalo, and that allotted to the latter to the Buffalo Hospital of the Sisters of Charity. Practically

there were thus created four separate and distinct life interests, each one in a prescribed part or portion of an entire fund, with a remainder over to a new beneficiary forever. The settlor, after executing in triplicate this declaration of trust, which contained also a power of revocation, deposited one original thereof, and also the four certificates of stock in a sealed envelope in his box in the vaults of the Mercantile Safe Deposit Company in the city of New York. The envelope was indorsed, "Declaration of Trust, Jonathan Scoville to Magdalena Rings and others," in a handwriting which was not the settlor's; but following that there was added by his own hand these words: "Declaration of trust with certificates of New York & Harlem R. R., certificates belonging to trust and being numbered 21815, 21816, 21817, 21818, 100 shares each. Duplicate declaration of trust filed with the beneficiaries and M. A. Whitney, 202 Main st., Buffalo, N. Y." And then attached thereto was this further memorandum in the testator's handwriting: "N. C. Scoville, for and in behalf of the within named beneficiaries. In case of my decease please see that the enclosed trust is faithfully carried out. Duplicates filed with beneficiaries and M. A. Whitney, 202 Main st., Buffalo,— J. Scoville;" and in the margin of such memorandum appeared the words: "Dated at Buffalo, January 24, 1887,— J. Scoville." The persistent purpose and obvious care of the settlor to make the trust effective and carry its proceeds safely to the appointed destination are further shown by his will, made in December of 1890, after the trust had stood and been fulfilled for almost four years. In article sixth of that will he recites the deposit of the deed of trust, adding as descriptive of it the words: "Which affects a portion of my estate, which portion is more particularly described in a paper inclosed with such deed of trust." He then directs his executors to carry out the provisions of such deed of trust so far as they can, but, in case they cannot, attempts to make a substituted trust for the use of the same beneficiaries and in the same proportions as recited in the deed. The testator made Locke and the Farmers' Loan

& Trust Co. executors of and trustees under said will, but by a codicil the present plaintiffs were appointed executors, and Locke and the Trust Co. became trustees under the will, article sixth being specifically included.

On this state of facts the Special Term held the trust deed invalid as creating a perpetuity, and the attempted trust of article sixth of the will also invalid and ineffectual, and carried the stock over to the residuary disposition, and so to persons other than the named beneficiaries. The General Term affirmed this decision, holding that the testator meant by the ultimate legacy to the four corporations respectively to keep in existence a trust to pay over income during the entire corporate life, the result being that the purpose of the testator is wholly thwarted and defeated.

The respondents' argument rests upon two propositions: the first that no trust at all was created by the deed, but that instrument amounted only to a promise without consideration to pay to the beneficiaries future accruing income from securities never transferred by the settlor, and of which he remained the absolute owner until his death; and the second, that if there was a trust it necessarily suspended the absolute ownership of the fund for more than two lives in being.

The first proposition has little support in the terms of the instrument itself and none in its surroundings. It is abundantly settled by authority that a trust of personal property may be effectually framed in which the author of the trust is himself the trustee. (*Martin* v. *Funk*, 75 N. Y. 137; *Barry* v. *Lambert*, 98 id. 306.)

In the present case there were both words and acts. The settlor first described the property which he severed from his general estate and set apart as the productive source of the income and dividends which he could not hold as trustee before they accrued or existed, except as he so held the certificates which gave the potential right, and then declared himself a trustee of the named beneficiaries, to receive and pay over to them, for their own use and benefit, all future income and dividends which should accrue. No beneficial interest in the prop-

erty was left in himself, but the whole of that interest was by his own act vested elsewhere. He held the legal title to the stock, but necessarily held it, from the date of his declaration, as trustee for the beneficiaries. There was no formal transfer on the books of the company from himself as an individual to himself as trustee, and he remained the nominal owner, holding the naked and barren legal title. In such a case, as between a vendor and vendee of stocks, the vendor holds the legal title as trustee for the vendee, because the former, having parted with the entire beneficial interest, can hold the legal title in no other way. (*Johnson* v. *Underhill,* 52 N. Y. 203.) In like manner, as between settlor and beneficiary, a transfer to the latter of all income and dividends necessarily transfers the whole beneficial interest and leaves the settlor a holder of the naked legal title on the books of the company as trustee for the beneficial owners. That is the situation in which, by the deed of trust, the settlor put himself and intended to put himself, and his concurrent acts clearly demonstrate that intention. He selects out and separates the four certificates from his general estate, places them in a sealed envelope, and indorses on that a memorandum describing the certificates as "belonging to the trust," and so explicitly declares himself trustee of the stock itself. It is quite true, as the learned counsel for the respondents contends, that the settlor kept and meant to keep in himself, for the time being, the nominal legal title. The reserved power of revocation made that a convenient and useful measure, but it is perfectly consistent with an explicit purpose to hold that legal-title as trustee for those to whom he had given the whole beneficial interest. (*Young* v. *Young,* 80 N. Y. 438.) His further language, which has been the subject of comment, is easily understood in the light of what he did. The words "in whose possession the said several certificates of stock may come without actual transfer," and "in trust to myself or to any custodian in whose hands the said certificates of stock may be deposited by me or by my order," show that he meditated the change of actual possession and the deposit which occurred,

and meant that the trust should nevertheless follow and envelope the certificates, although there should be no "actual transfer" on the books of the company. I think, therefore, that a good and valid declaration of trust was made, and that upon its execution the settlor held the legal title to the stock in trust for those to whom he had given the income expected to issue from it, which amounted to the entire beneficial interest.

The respondents' second proposition is more difficult to answer until we see clearly the real point upon which it turns, and which I take to be, whether the words and acts of the settlor will bear the interpretation of four several trusts, each for the life of a beneficiary, with an absolute gift over in each instance; or whether, because that interpretation is impossible and inadmissible, we are driven to the construction that the trust was to continue forever as the instrument of an eternal distribution of income and dividends, an interpretation involving, in greater or less degree, the destruction of the trust.

There is no difficulty in regarding the four shares as separate and several, although the fund itself was to be held as a whole until the moment for an actual severance should come. (*Savage* v. *Burnham*, 17 N. Y. 571; *Stevenson* v. *Lesley*, 70 id. 512.) Why such a severance was not made at the outset is apparent from the facts. The settlor held the stock in four separate blocks of one hundred shares each, represented by four certificates, each block of a hundred shares having its own certificate. If he had desired to give each of the beneficiaries the use and ownership of exactly one-quarter of the whole four hundred shares, he could and very probably would have set apart one certificate for each, and so have made the severance which the form of the certificates would have naturally suggested. But he intended a different division. Magdalena and Anna were each to have three-tenths of the whole net income, or in effect, the dividends upon one hundred and twenty shares each, while Henry and Minnie were limited to the dividends resulting from eighty shares each. It followed that the division of the certificates was not such as the division intended by

the settlor, and so he divides the income and dividends into portions consisting of three-tenths each to the first two and two-tenths each to the last two beneficiaries, requiring in one case the income product of more than any one certificate and in the other that of less than any one certificate. Convenience thus dictated the division of the whole fund arithmetically without its actual severance; but the shares of each were described as that person's allotted portion, and such portion, distinctly and severally and by itself, was identified in each one of the four instances as the specific share or portion to go in the end to the particular corporation named. Each life tenant took wholly independent of the others, and without the least connection with them, and regardless of what had happened or might happen to them; and each corporation, upon the occurrence of its own prescribed event, took its own several and specific share. No emergency of the trust, beyond the mere convenience of leaving the investment for the time being undisturbed, required it to be kept as a whole and undivided fund. In such a case, where we can see in the words of the instrument creating the trust fair indications of an intent to establish several trusts rather than one only, whether that be always necessary to the result or not; where the settlor or testator takes note of each portion as a several thing to be itself transmitted to a new taker; where the gift is in separate shares; and where no complications intervene to prevent, it is our clear duty to regard the trusts as several when that view will save them from destruction.

I have not failed to reflect upon the adverse view of the majority of the General Term. They say that if we hold that there are here several trusts "it will be impossible for the creator of a trust, however much he may desire to do so, to express any intention to have a fund remain *in solido*." No case denies him that right. We here do not deny it. If this settlor had expressly said, in terms admitting of no other construction, that the fund should so remain forever, or made dispositions which required it to so remain, we should say so and let the consequences follow. There are many such cases, gen-

erally where there are provisions of survivorship involving contingencies which compel the fund to remain unbroken until it can be known who shall take and in what proportion. Such cases and those like the present were distinguished and separated in *Lorillard* v. *Coster* (5 Paige, 172; 14 Wend. 265), and again in *Everitt* v. *Everitt* (29 N. Y. 39), upon the broad distinction between a taking by the beneficiaries as joint tenants and a taking by them as tenants in common, and so distributively (*In Matter of Verplanck*, 91 N. Y. 443); and none of the latter make it at all difficult for a settlor or testator, by creating a joint tenancy among the beneficiaries, or by direct and explicit provisions for continuing the fund *in solido* in the hands of the trustees for a specific period, to effect that precise result. Here the settlor has not said that the fund should remain *in solido* forever in decisive terms, nor is it a necessity flowing from his dispositions. His language is at least equivocal and his intention matter of inference, and we are at liberty to consider and determine what is the true inference, and so to separate the trusts.

We should now ascertain what character and quantity of interest the deed transmitted to the several corporations upon the death of the life beneficiaries. I have already described it as the entire interest and absolute ownership, and it is necessary to justify the description, and the process will bring clearly into view what I suppose to be the decisive inquiry in the case. If the principal is put in a trust extending beyond each life interest and covering the succeeding corporate life, there is a suspension of the absolute ownership which will inevitably destroy the trust. If, on the other hand, by the legal construction of the instrument, each trust terminated at the death of its life beneficiary, then, in the absence of any gift of the principal by express mention directed to its disposition, the gift to the ultimate beneficiaries of the whole income and dividends is a gift of the principal vesting the absolute ownership. In *Paterson* v. *Ellis* (11 Wend. 298), the rule was declared that "a devise of the interest or of the rents and profits is a

devise of the thing itself out of which that interest or those rents and profits may issue." And the court added : " Where the intention of the testator to give only the use is clear, manifest and undisputed, the rule must yield to the stronger force of the intention ; but where it is doubtful whether the use only or the absolute ownership was intended to be given the rule has been allowed to have a controlling effect." In *Smith* v. *Post* (2 Edw. Ch. 526), a gift of the rents and profits of land was held to have vested the title to the land in such devisees, because, while there was mention of the land, there was no disposing mention of it. And in *Hatch* v. *Bassett* (52 N. Y. 362) is was said : " A general gift of the income arising from personal property, making no mention of the principal, is equivalent to a general gift of the property itself." The comment of the trial judge upon this case shows clearly, I think, where the decisive point of our inquiry is to be found. He deems the authority inapplicable because, as he says, " there is a mention of the principal which is given to the trustees named." But that is one form of the exact question involved. Was it so given ? The trustee always takes the legal title, but only such as is required by the scope and extent of the trust itself ; and, where that continues but for a life, only a commensurate legal estate passes, and the fee in the land subject to the trust, and the principal of a fund subject to the life use remain undisposed of or pass elsewhere. (*Embury* v. *Sheldon*, 68 N. Y. 234, 235 ; *Stevenson* v. *Lesley*, 70 id. 517.) If this trust terminated at the death of the life beneficiary then the principal was never held by the trustee except during the life tenancy, and when freed from that incumbrance remained intact and wholly undisposed of as such. The crucial inquiry, therefore, is how long, by the true construction of the settlement, was the trust to continue, which is the logical equivalent of the other question, whether only the use was intended to be given. An answer to either of these questions substantially answers the other ; and so we may study the duration of the trust considered by itself. The settlor did not say how long it should last. He did not explicitly or in terms fix the period

at which it should determine. Nothing in the deed directly answers the question. We can only answer it by ascertaining what is possible under the usual and proper rules of legal construction. One of these rules is that trusts end when their intended purposes are accomplished and when they are no longer necessary to effect the designed results. We are thus led to the inquiry what in truth were the actual purposes of the trust, what were its objects, and wherein lay the necessities for its existence. Obviously, the trust was needed during each life of each of the primary beneficiaries, in order to collect dividends and pay them over, and to protect and keep the principal intact until the close of each life. Beyond that there is disclosed to us no need, no object, no purpose requiring or even making convenient a prolongation of the trust. There was nobody for whom the principal was to be preserved as a future remainderman; the corporate legatee was under no disabilities and in need of no protector or guardian; and, it is only by assuming the theory of a purpose to give the income merely, and to withhold the principal forever, involving a distrust of the corporations nowhere indicated, that a motive for the continuance of the trust can be imagined, and an excuse for its existence framed. But that assumption is itself in dispute and founded upon an ambiguity. The reasoning of the respondents' counsel appears to be in substance this: the trust was to pay over, for instance, to Magdalena three-tenths of the income and dividends, and on her death or marriage, to pay over the portion allotted to her, which was again three-tenths of income and dividends, to St. John's Church; and so the trust was to continue, in order to make such payment, through the whole corporate life; and thus the continuance of the trust is inferred from the gift of income and dividends to a corporation forever. But that, as we have seen, is, in and of itself, an ambiguous fact, and the inference wholly needless. As was said in one of the cases cited, such a gift may mean an intention to give merely the use, or it may mean an intention to give the absolute ownership; and it helps not at all to reason in the vicious circle, that the trust continued

because the use only was given, and the use only was given because the trust continued. The fact, therefore, that income and dividends forever were given to a corporation, does not necessarily involve the presence of a trust, and, instead of settling the duration of that actually created, derives its own scope and meaning from the determination of that duration; and it becomes obvious that we have full liberty to decide that the trust declared ended in the case of each life beneficiary at his or her death, if the language used will permit.

That language not only permits, but, I think, indicates such construction. The settlor, in the case of Anna, for example, instead of saying that he holds her share in trust, to pay her the income and dividends for life, *and* then to pay them to the Asylum *during its corporate life*, follows the trust to her with the words "provided, however," that upon her death her share shall be paid to the Asylum. The word "provided," usually indicates a condition, and would seem to show that a trust for Anna's life was created, with a subsequent condition that on its termination the portion allotted to her should go to the Asylum. It is not a sufficient answer to say that the trust is for "the uses and purposes following;" and payment of income to the corporation is a use and purpose "following," and contained in the same paragraph with the use for the benefit of Anna. That construction would put under the dominion of the trusts another condition subsequent, contained in the same paragraph, and introduced again by the word "provided." That condition is that Magdalena and Anna, out of the income apportioned to them, "shall each bear and pay an equal portion of the taxes, repairs and insurance of the premises this day leased to the beneficiaries herein named." Each was to pay: not the trustee: and pay it out of the income which should come to her from the trust. This proviso was clearly not within the trust or among its uses, although in the same paragraph and following the primary declaration. So that we have a case where the intended duration of the trust is only certain down to the death of the life tenants, and, after that, becomes at least doubtful and uncertain, in view of its natural and rea-

sonable purposes, and the language used ·by the settlor in creating it.   In such a case, the trust is not to be prolonged to its own destruction by mere inference or implication (*Greene* v. *Greene*, 125 N. Y. 506), but must end at the termination of each life estate.

If now we turn to the other form of the same question, which is whether the mere use was intended to be given, or whether we are permitted to say that the gift was absolute and carried the principal itself, we find ourselves bound to choose the latter alternative, as I have already shown, unless there is disclosed an intention to give the use merely which is " clear, manifest and undisputed."   That is not true of this case by any means.   The only rational object of giving the use merely would have been to preserve the principal for some other destination.   No conscious disposition of that principal was made by the settlor outside of and beyond the corporate legatees.   His deed contains no such ultimate disposition.   Evidently the settlor contemplated no remainder, for there could be none where the entire beneficial interest was given forever, because given to corporations which do not die.   It was for cases of such character that the rule was framed which adds the naked and barren legal title to a gift of the entire beneficial interest, because outside of that such title can go nowhere and represents nothing.

We are thus at liberty to hold that there was no intention to give the mere use ; and at all events it is impossible to say that such an intention, if there are any indications of its existence, is clear, manifest and undisputed.   It is very far from that ; and so the rule is controlling which regards the gift of the entire income and dividends as a gift of the principal out of which they issue.

No rule of construction is violated by holding that the settlor created four separate and independent trusts instead of one only ; that each of those trusts terminated at the death of its life beneficiary, or in one case on the precedent marriage of that one ; that there was no disposing mention of the principal of the fund when freed from the temporary incum-

brance of its trust; and that the gift thereupon of the income and dividends to a corporation forever was a gift of the principal out of which they were to issue. Such then is one permissible and possible construction, and being so we are bound to prefer it to the other interpretation suggested, which makes the creator of the trust contemplate its existence and operation forever, and dictate that the principal of the fund should be eternally inalienable, with the inevitable result that his whole disposition must fail, and his anxious intention be thwarted in all its parts.

It follows that the judgment of the courts below should be reversed, and judgment be entered declaring the dispositions of the declaration of trust executed by the testator in his lifetime to be valid; that the plaintiffs as executors deliver over to the defendant trustees under the trust the shares of stock therein described, and the dividends thereon if, and so far as, the same have come to their hands, and have no other duty to perform in respect thereof; that the said trustees hold said stock upon the trusts herein described and defined, and that the costs of all parties in all the courts be paid out of the testator's estate.

All concur.

Judgment accordingly.