AMELIA M. MILLARD, Appellant, *v.* OTIS G. CLARK and Another, as Executors, etc., of ORANGE R. YOUNG, Deceased, Respondents.

*Deposit made "subject to the control" of a father in the name of his child — trust created thereby — determined by surrounding circumstances — trust of personal property, how created.*

Where a father's control over money is in the capacity of a trustee for his child, the reservation in the father of the control thereof is not fatal to the creation of a trust; nor is the retention by him of the bank books representing the deposit of the money necessarily fatal to the creation of a trust. The retention and possession of the instrument by which a person created a trust in himself until his death does not render the trust ineffectual.

Where a deposit is made in a bank by one person in the name of another, "subject to the control" of the person making the deposit, such words do not import the retaining of ownership or title to the money, but simply the management thereof, which, coupled with the declaration of the person making the deposit as to the ownership of the money, and the purpose for which it was being kept, is open to the interpretation that the person, acting as custodian or trustee of

the money of the person in whose name it was deposited, retained only such legal rights in regard to the same as were held by him as trustee.

A trust of money or personal property can be created under which the author of the trust is the trustee.

A formal or written agreement is not necessary to create a trust of money or of any personal property ; any declaration, however informal, evincing the intention with sufficient clearness will have that effect.

The refusal of a parent to turn over certain money on deposit in his child's name, and subject to the parent's control, or a portion of it, to her, coupled with the statement that "after his death she might need the money more than while he lived, and he would keep it so that she would then have something," does not deprive such money of its character as a trust fund, nor does a withdrawal of a portion of such amount and its reinvestment in bonds and mortgages in the name of the parent, without the knowledge of his child, change the legal relation between them in regard to such trust fund.

Where money is deposited in a bank by one person in the name of another, subject to the control of the person depositing the same, and the bank book is kept in the possession of the person depositing the money, the money so deposited may be recovered by the person for whom it was designed to be held in trust. The form of the deposit does not of itself determine the question as to whether or not a trust was created ; surrounding circumstances may be resorted to in determining what was intended.

APPEAL by the plaintiff, Amelia M. Millard, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Rensselaer on the 9th day of February, 1894, upon the decision of the court rendered after a trial at the Rensselaer Special Term dismissing the plaintiff's complaint upon the merits.

*Edwin A. King*, for the appellant.

*H. D. Bailey*, for the respondents.

HERRICK, J. :

The appellant and the respondent Ella J. Williamson are the daughters of one Orange R. Young, deceased. The appellant was born in 1848; she and her sister are the only issue of their father. Until their respective marriages both resided with and were supported by their father.

In 1886 their father remarried, and his widow survives him.

It appears that while quite young each of the children was possessed of a child's savings bank, in which she placed the pennies and small change received from her parents and friends.

In February, 1858, the appellant's father opened an account in the Central Savings Bank of Troy in her name and received a pass bank book made out in her name, and from time to time deposited other money upon such account, and it appears that he took money from the child's savings bank and deposited it in said Central Savings Bank.

He told her that he had started a bank account for her, and occasionally showed it to her, but never delivered the bank book to her to keep herself. * Deposits were made from time to time, frequently of very small sums, such as might well be the savings of a child. He remarked, in referring thereto, that he "thought it was a good idea to learn them to save their pennies; they would be more liable to save their money when they grew up."

On or about August 12, 1864, on the birthday of the appellant, her father told her that he would give her a present of $100, and put it in the bank for her; she wanted the money herself, and he told her that he would let her take it for a while, but that she must return it, and he would put it in the bank for her; he handed her the money, and she retained it for part of a day, and then returned it to her father, and he deposited it to her credit in the Troy Savings Bank, *subject to his control*, and opened an account, which was subsequently increased by various deposits made by him, and by the interest earned by it.

In October, 1878, the account in the Central Savings Bank, with the accumulated interest, amounted to the sum of $349.91. About that time said bank ceased to do business, and the account was transferred and made a special deposit on interest in the Central National Bank of Troy, *subject to the control* of her father, the said Orange R. Young. The account as it theretofore had been in the Central Savings Bank had been subject to no such limitation, but was simply deposited in appellant's name.

These bank books were shown to the plaintiff from time to time, and she was told by him of the money she had in the bank, which he was constantly increasing for her until his death.

From the time of the opening of said accounts they were often mentioned in the family, and it was often stated by appellant's father that they were appellant's property, and that at his death she could have them. The appellant and her father had frequent conversa-

tions relative to them, and at some of such conversations the appellant urged her father to turn over the accounts to her, but he refused to do so, stating that after his death she might need the money more than while he lived, and he would keep them, so that she then would have something, and that when he died she would not be ashamed of the amount in the bank.

Similar accounts were opened and kept in the same way for the benefit of his other daughter.

On or about May 2, 1889, her father withdrew from the two accounts about the sum of $1,800, which he invested in bonds and mortgages, one for the sum of $1,300 and the other of $500.

The assignments of such bonds and mortgages were made out in the name of Orange R. Young. On the $1,300 bond said Young pasted a paper bearing in his own handwriting the words following :

" This real estate bond of $1,300 is for my daughter Amelia M. Millard. It is the money she had in the savings bank to her credit, which was put in the bank when she was small. I now put it in this form so that she can realize more interest. At my death this is to go to her. This bond is dated April 1st, 1889.

" TROY, *May 2nd*, 1889.                         O. R. YOUNG."

The bond of $500 had a paper attached to it in the same words, excepting the description of the amount of said bond.

The moneys received from time to time as interest upon such bonds were deposited by her father to the credit of the appellant, subject to his control, in the Central National Bank, to the credit of the account already referred to.

The $1,800 withdrawn from the accounts and invested in the bonds and mortgages referred to, was withdrawn and was invested without the knowledge of the appellant.

Orange R. Young died in March, 1892, leaving a will, wherein the respondents were appointed executors, and whereby he disposed of his estate, among other things, creating a trust of a portion thereof for the benefit of the appellant and her children.

Nowhere in the will was any specific mention made of the bonds and mortgages or of the accounts in the savings banks hereinbefore referred to.

The appellant made a demand of the said executors for the

delivery to her of the bank books containing the accounts in the said savings banks, and of the above-mentioned bonds and mortgages, which was refused, whereupon she commenced this action to compel the delivery thereof.

At the close of the evidence the court dismissed the plaintiff's complaint, with costs. From the judgment entered thereon this appeal is taken.

There is no conflicting testimony in the case; the only questions are those of fact arising from the different inferences to be drawn from the undisputed evidence in the case and the questions of law arising therefrom.

Various exceptions were taken by the appellant to the findings of fact and law and the refusals to find by the trial court.

It will be only profitable, however, to call attention to the three following requests to find matters of fact, to wit :

*Seventh.* " From the inception of said respective accounts until the death of said Young, March 14th, 1892, said accounts were frequently discussed by and between plaintiff and said Young, and in the family of said Young, and said pass books were often seen, and occasionally examined by plaintiff, and that it was often and commonly stated by Young, and understood that said accounts and books were *the property of plaintiff, and by said Young held expressly for her, and were to pass into her possession and control at his death.*"

The court modified such request to find by striking out the italicized words and inserting instead the following :

" *To belong to the plaintiff, and were to pass into her possession and control at his death.*" To which modification the appellant excepted.

*Eleventh.* " Said Young intended said accounts, bonds, mortgages and fund to be, and he held and managed the same solely and exclusively, for the benefit of this plaintiff." Which the court refused to find. To which the appellant excepted.

*Twelfth.* " Said Young neither made, nor intended to make, any testamentary gift or disposition of said accounts, bonds, mortgages or fund." Which request the court likewise refused, and to which appellant excepted.

With great respect for the learned justice before whom the case was tried, it seems to me that he erred in the inferences of fact that he drew from the testimony in this case.

Most of the facts and the evidence thereof were agreed upon between the parties; some of the evidence was documentary; the oral testimony is very limited, so that I have less hesitation in differing from the trial justice as to the facts than I would in a case where all the facts are dependent, or largely dependent, upon oral testimony, where the trial court has an opportunity to observe the witnesses, their demeanor and manner of giving testimony, which afford him greater facilities for arriving at a conclusion as to who is telling the truth, and as to what the real facts are, than are possessed by the appellate court, which does not see or hear the living witnesses.

It appears here that the bank account was originally started from gifts made to appellant by her father and other persons, which she had deposited in her child's bank; and that moneys taken from her savings bank continued to be deposited from time to time by her father; that the deposits so made in the savings bank were in her name; that she was told by her father that he had started a bank account for her, and the moneys so deposited were spoken of by him from time to time to her and in the family, and to others, as her property, not as property or money that was to be hers at some future time, but as money that was then hers.

The written memoranda made by him, and attached to the bond, recognizes the money, with which such bond was purchased, as her money. "It is the money she had in the savings bank to her credit, which was put in the bank when she was small. I now put it in this form so that she can realize more interest."

This is a recognition that the money was and had been for some period of time her money, not that she was to become the owner of it at some future time, but that she was then the owner of it.

This case differs in essential particulars from the case of *Beaver* v. *Beaver* (117 N. Y. 421; 137 id. 59), and, indeed, from all the cases to which I have been referred, where moneys have been deposited in the bank by one person for the benefit of another.

In the *Beaver* case the father deposited his own money in the savings bank in his son's name, but retained possession of the bank book himself, and never spoke of it or in any other way recognized

it as belonging to his son; the only sum that was thereafter drawn from the bank until after the father's death was drawn by the father himself. The son died about twenty years after the deposit was made, never having known anything about such deposit having been made in his name, and in the meantime having opened an individual account in the same bank in his own name, and it was held that these circumstances did not show a gift or establish a trust for the benefit of the son.

In the case before us the account was opened by a deposit composed entirely or in part of the accumulated savings of the appellant, then a child, of moneys which she had received from her parents, and other persons; it was in her own name, not subject to the control of any one, and it remained so on deposit, without any limitation or restriction upon it, for a period of twenty years; it was so deposited with her knowledge; she saw the bank book from time to time; it was talked of by her father to her, and to and in the presence of the family and others, as her money; her savings continued to be taken and deposited from time to time to such account.

The money which had been given to her by her father and other persons, before it was placed in the savings bank, was hers; that stamped the character of the account from the beginning as an account composed of her money; not money that was to be hers thereafter, but of money that was hers and had been hers prior to its deposit. The money that was contributed thereafter by the father, by placing it in the bank without its previously going through her hands, constituted a gift to her; it became part and parcel of her account; it became a part of her money; was so intended by the father, and that intent was effectuated by placing it with that which was theretofore hers. A very large proportion of the account consisted of accumulated interest upon the deposits, which was also hers.

The other account, the one opened in the Troy Savings Bank, was opened by a deposit of $100. The $100 was presented to her as a birthday gift, and was for a time, although for a short time, in her physical possession and control, delivered to her by her father, and returned by her to him to be deposited in the savings bank for her; that was an absolute gift; all that was necessary to constitute a valid gift was done; there was an actual manual delivery by the

donor to the donee.　When that money was deposited in the savings bank it was the appellant's money that was deposited, not the money of her father; the account was opened with her money deposited in her name; that stamped the character of the account in that bank.

The accretions that were made to it by the accumulation of interest, by deposits of her money, by the deposits by the father of moneys belonging to him in the same account, did not change the character of the account, but the account impressed its character upon the money so deposited, and rendered the account one of money belonging absolutely to the appellant.

The money in both banks was recognized by the father as money belonging to his child, money that was absolutely hers, but money that he retained the control of until the time that she would need it most.

The deposit in the Central Savings Bank was there about twenty years after the account was originally opened, and was then placed in another bank in the name of the appellant, subject to the father's control.

It must be borne in mind that it was her money whose place of deposit was being changed; his control over it was that of a trustee for her, and the reservation in himself of the power of control was not fatal to the creation of a trust. (*Van Cott* v. *Prentice et al.,* 104 N. Y. 45; *Locke* v. *F. L. & T. Co. et al.,* 140 id. 135–142.)

The retention by him of the bank books under the circumstances was not fatal to the creation of a trust; the fact that he retained possession of the instrument by which he created a trust in himself until his death does not render it ineffectual. (*Martin* v. *Funk,* 75 N. Y. 134; *Cunningham* v. *Davenport,* 74 Hun, 53.)

In the case of *Von Hesse* v. *MacKaye* (136 N. Y. 114) the intended donor placed bonds in the hands of a trustee for the sole benefit and behoof of his daughter, with the proviso that such bonds were to be subject to the order of the father for and during his life. Subsequently he withdrew some of the bonds from the trust, but yet it was held that the reservation of power and control over the bonds did not invalidate it, the court saying : "But few things are better settled than that the reservation of such a power is entirely consistent with the trust and does not work its destruction where the rights of creditors are not involved."

It seems to me that in view of these decisions the trial court was in error in holding that "to establish a trust it must appear that no power is left in the settler to revoke it, or to defeat its effect by any different disposition of the property," and in holding for that reason that no trust had been established.

The words "subject to the control of Orange R. Young," do not import the retaining of ownership or title, but simply the management thereof, which, coupled with his declaration in this case as to the ownership of the money and the purpose for which it was being kept, it seems to me admit of no other interpretation than that he was acting as the custodian or trustee of her money, and that such legal rights as he retained were held by him as trustee.

A trust of money or of personal property can be created by which the author of the trust is the trustee. (*Locke* v. *F. L. & T. Co. et al.*, 140 N. Y. 135–141.)

A formal or written agreement is not necessary to create a trust of money or any personal estate; any declaration, however informal, evincing the intention with sufficient clearness, will have that effect. (*Day* v. *Roth*, 18 N. Y. 448–453.)

The refusal of the appellant's father to turn over the money, or a portion of it, to her, coupled with this statement that "after his death she might need the money more than while he lived, and he would keep it so that she would then have something," did not deprive it of its character as a trust fund, but rather emphasized the manner in which he held it. (*Mabie* v. *Bailey*, 95 N. Y. 206–210.)

It has been held time and again in the case of money deposited in a bank in the name of one person in trust for another, as " B. Bailey in trust for Ida Mabie," and the bank book kept in the possession of the one depositing the money, that the money so deposited can be recovered by the person for whom it was designated to be held in trust. (*Mabie* v. *Bailey*, 95 N. Y. 206. See, also, *Willis* v. *Smyth et al.*, 91 id. 297; *Fowler* v. *Bowery Savings Bank*, 113 id. 450; *Cunningham* v. *Davenport*, 74 Hun, 53.)

What difference is there in principle between moneys deposited to account of " B. Bailey in trust for Ida Mabie," and moneys deposited to account of " Ida Mabie, subject to sole control of B. Bailey."

In each the beneficial interest is in Ida Mabie; in each the management and control of it is in B. Bailey. The form of the deposit does not of itself determine the question, but surrounding circumstances may be resorted to to determine what was intended.

In the *Mabie Case* (95 N. Y. 206) Bailey deposited his own money in trust for Mabie; in this case it was the appellant's money or a portion of it. Again, Bailey exhibited the pass book to Ida Mabie's mother, together with pass books containing accounts for the benefit of her other children, and, without stating the amount of the several deposits, informed her that the deposits for the children were large enough to amount to something when they grew up. And in reply to her question, "Why he could not let us have the money now," replied, "It would do us more good hereafter."

The subject of the deposits was spoken of by Bailey on several occasions in which the provisions made for Mabie and other members of the family were recognized. It will be seen that the circumstances of that case were singularly like those in this.

The court said: "These facts * * * confirm the proof, furnished by the bank books and pass book, of the creation of a trust, and exclude the supposition that the transaction was not intended to be that which the written evidence unexplained imports."

Subsequently the deposit was withdrawn by Bailey during his lifetime, and yet Ida Mabie was held entitled to recover the amount from the executor of Bailey's estate, the court saying: "If the withdrawal was with the intent on his part to ignore the trust, and convert the money to his own use, it might be competent evidence of a change of purpose, but it throws no light on the original transaction."

The withdrawal of a portion of the money deposited in this case, and the investment of it in bonds and mortgages, the title of which was taken in the name of Young, without the knowledge of the appellant, did not change the legal relation in the least, but coupled with the written declaration that he attached to them, and which I have before adverted to, rather strengthens the evidence of the relations between them, and containing an explicit declaration that the money with which the bonds were purchased belonged to the appellant, and that he had changed the investment, not for his interest, but for hers, that she might derive more interest, and this followed up by his subsequent acts in depositing the interest received upon the

bonds and mortgages to her account, all furnish additional evidence that the money was the appellant's, and that the control that he exercised over it was not that of one having or claiming title to it, but simply of one holding and managing it for her benefit. The case of the bonds and mortgages in question here differs greatly from that of the bonds and mortgages in question in *Matter of Crawford* (113 N. Y. 560), and in *Wadd* v. *Hazelton* (137 id. 215). In the *Crawford* case the bonds were purchased with the intended donor's own money; he kept them in his own possession; he drew the interest himself and used it for his own benefit; there was never at any time any recognition by him that the money with which the bonds were purchased belonged to Mrs. Crawford, or that the bonds were hers, but simply that he intended that they should be hers after his death.

So in the *Wadd* case, the mortgage was purchased with the intended donor's own money, and an assignment made out to the proposed beneficiary, but never acknowledged or recorded, but deposited with the testator's own papers, and never at any time was there any statement that the money with which the mortgage was purchased belonged to the intended beneficiary, or that the mortgage itself belonged to her — simply an intention that it should belong to her after his death. In both cases the beneficial interest in the bonds and mortgages were retained by the intended donors in themselves; they drew the income from them for their own benefit during their lives.

Here, as we have seen, Young invested appellant's money — money that he avowed to be hers — retaining no beneficial interest in it, or in the bonds and mortgages for himself, but turned the income thereof into the account of the appellant.

It seems to me, therefore, under all the circumstances, that the money deposited in both savings banks must be regarded as the appellant's own money; that the gift thereof, so far as it was originally derived from her father, was completed by actual delivery, some of it into her hands, the rest into her bank account, consisting of her money, and that as to the money that still remains in the savings bank it must be regarded as absolutely hers, and as to that which was withdrawn, without her knowledge, and invested in bonds and mortgages, such investment must be held to have been made for her benefit, and such bonds held by her father as her trustee.

It follows, from these conclusions, that the judgment of the trial court should be reversed; there being no conflict of testimony in the case, I do not see that there is any occasion for a new trial, and the judgment is, therefore, reversed, and judgment ordered for the plaintiff, with costs of trial in the court below and with costs of this appeal.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed, with costs.