JOHN MARTIN, as Executor, etc., of JAMES MARTIN, Deceased, Respondent, *v.* WILLIAM MARTIN, Appellant.

*Savings bank deposit in the name of a nephew of the depositor — what accompanying facts establish a trust in his favor.*

James Martin, a depositor in a savings bank, upon being informed that his accounts were in excess of the $3,000 limit, suggested to an officer of the bank that $2,000 be placed in the name of his nephew, William Martin, which the officer refused to do unless it was understood and intended that at James Martin's death the money should belong to William Martin. The officer finally consented to open an account "William Martin, James Martin may draw," and explained to James Martin that the money would form no part of his estate, but would be William Martin's and might be drawn by him. James Martin replied that that was what he wanted, and insisted on making the deposit in that form, which was done, the bank book being delivered to him.

*Held,* that the transaction constituted a trust in favor of William Martin, the validity of which was not impaired by the fact that William was ignorant of it and that James Martin kept the pass book in his possession until a few days before his death, when he delivered it, with others, to the person whom he had nominated as executor, requesting him "to take charge of them and see that what was right was done with them," and stating that William Martin "was worthy of being helped."

APPEAL by the defendant, William Martin, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 19th day of June, 1899, upon the decision of the court rendered after a trial at the Monroe Special Term.

James Martin was a depositor in the Monroe County Savings

Bank, and in January, 1896, had five distinct accounts with the bank. Its secretary and treasurer advised him he was in excess of the $3,000 limit, and Mr. Martin called to change the accounts. He suggested that an account to the extent of $2,000 be placed in the name of William Martin, his nephew, and the defendant in this action. The secretary declined to do this unless it was " distinctly understood and intended that at his death this should be William Martin's money." The secretary finally consented to open the account in this form, " William Martin, James Martin may draw," but " with the distinct understanding that it was, the money of William Martin." The secretary further testified : " I stated to James Martin that if I opened an account in the name of ' William Martin, James Martin may draw,' it would be William's money, and that William Martin could draw it upon being identified, and that it would not be a part of his estate. He said he would make the deposit under these conditions, and said that was what he wanted and he insisted on making the deposit."

The account was entered in the form suggested, and the bank book was delivered to James Martin, who died about a year later, leaving a last will and testament. A few days before his death the testator delivered this pass book with several others to the plaintiff, telling him " to take charge of them and see that what was right was done with them," and further stated that William " was worthy of being helped." The plaintiff, as executor, sued the bank to recover this fund with other deposits, and the defendant, William Martin, who claimed this specific deposit, was made party defendant by order of this court, in lieu of the bank which was willing to pay the rightful owner.

*A. W. Curtis,* for the appellant

*Roy C. Webster,* for the respondent.

SPRING, J.:

The evidence shows very clearly that James Martin intended that the deposit of $2,000 should be the property of his nephew William. The change in the form of his deposit was made under stress, because the bank would not permit him to carry so large a sum to

his credit, or of which he was the owner. But when the old gentleman was obliged to meet this requirement of the bank he evidently concluded to comply with it by making a definite provision for William, who was the son of the brother Mr. Martin selected for his executor.

No precise form of words is necessary to constitute a trust. The act done; the motive for it, if known; and any declarations accompanying the act are to be examined for the purpose of ascertaining what was in the mind of the person at the time the alleged trust originated. The depositor had no children. He had accumulated considerable personal property, and was an old man. He was called upon to make this change in his account, and when confronted with the proposition that the deposit to the credit of the defendant meant absolute title in the latter, he not only acquiesced, but insisted upon the deposit being in that form after the explanation made by the secretary of the bank, and when told that it would be William's money, added, " that was what he wanted." Whatever may have originally instigated the action of the decedent, his language at the time the account was opened unmistakably indicates he intended this sum to belong to the defendant. The fact that he retained control of the fund does not militate against this position. He was the trustee, and in giving life to the trust could reserve in himself dominion over the fund. (*Van Cott* v. *Prentice,* 104 N. Y. 45; *Locke* v. *F. L. & T. Co.,* 140 id. 135, 142.)

In *Millard* v. *Clark* (80 Hun, 141), the court, in commenting on a deposit, in like language say at page 149 : " The words, ' subject to the control of Orange R. Young,' do not import the retaining of ownership or title, but simply the management thereof, which, coupled with his declaration in this case as to the ownership of the money and the purpose for which it was being kept, it seems to me, admit of no other interpretation than that he was acting as the custodian or trustee of her money, and that such legal rights as he retained were held by him as trustee."

While the retention of the bank book may be inimical to the position that this was a gift by the decedent, it does not contravene the trust. It was an act in harmony with his control of the property. (*Martin* v. *Funk,* 75 N. Y. 134.)

The judge, at Special Term, relied upon *Beaver* v. *Beaver* (117

N. Y. 421; S. C., 137 id. 59) in deciding that the plaintiff was entitled to this deposit. In that case, John O. Beaver deposited two sums to the credit of his minor son Aziel, "payable to John O. Beaver," which words appear to have been stricken out. Later he drew part of this money from the bank, but the balance of it continued on deposit with the form of the account unchanged for upwards of twenty years, and after the death of the son who in the meantime had married. The son never knew of the deposit. The making of it was unaccompanied by any declaration that it belonged to the son, and, so far as anything was done in reference to the account by the depositor, it was in assertion of the title in himself. The father retained the pass book and presented it as occasion required to have the interest credited. The son had a personal account at the bank which was closed shortly before his death. The Court of Appeals, in determining that there was no trust, say at page 428 : "There was no declaration of trust in this case, in terms, when the deposit of July 5th, 1866, was made, nor at any time afterwards, and none can be implied from a mere deposit by one person in the name of another. To constitute a trust there must be either an explicit declaration of trust, or circumstances which show, beyond reasonable doubt, that a trust was intended to be created." In that case the only fact upon which either a trust or a gift could be based was that a deposit was made in the name of the son ; and all the court decided was that a bare deposit, in that form and unexplained by extrinsic circumstances or declarations or facts, was inadequate to uphold a gift or to give birth to a trust. The court was careful to limit the rule, and implied, negatively at least, that if the facts accompanying the deposit indicated a purpose to create a trust, one would be upheld. That is, the intention of the depositor, if discovered, was to be the guide for the court whatever might be the manner in which that intention was evinced.

The cases I have been able to examine, akin to the one last discussed and which held that no gift or trust was justified, were also similar to the *Beaver* case, in that the intention of the depositor to deprive himself of the money or fund was founded on inference alone from the simple fact of the form of the deposit. (See *Cunningham* v. *Davenport*, 147 N. Y. 43.) But the cases are also explicit in determining that where the depositor, by his acts or dec-

larations, gave clear evidence of an intent to create a trust, such intention will be carried out. (*Millard* v. *Clark*, 80 Hun, 141; *Mabie* v. *Bailey*, 95 N. Y. 206, 210; *Martin* v. *Funk*, 75 id. 137; *Ruet* v. *Ruet*, 28 App. Div. 553.)

In *Martin* v. *Funk* (75 N. Y. 141) Chief Judge CHURCH quotes approvingly the following from Hill on Trustees: " When the author of the voluntary trust is possessed of the legal interest in the property a clear declaration of trust contained in or accompanying a deed or act which passes the legal estate will create a perfect executed trust, and so a declaration or direction by a party that the property shall be held in trust for the object of his bounty, though unaccompanied by a deed or other act divesting himself of the legal estate, is an executed trust."

The fact that there was no delivery of the pass book, or that James Martin reserved the right in himself to revoke this trust, or the want of knowledge of William, are not potential to prevent impressing the deposit with the attributes of a trust. (Cases *supra ; Willis* v. *Smyth*, 91 N. Y. 297; *Von Hesse* v. *MacKaye*, 136 id. 114; Thorn. Gifts & Adv. § 338 *et seq.*)

Had this deposit been in terms *in trust for William Martin*, under the authorities that would have indicated the design by the depositor to create a trust and with William as the beneficiary. That parol proof can be resorted to to characterize the nature of the deposit is also well established. Clearer proof may be exacted where the trust in a measure rests upon oral declarations, but that relates merely to the weight of the evidence. If that unequivocally demonstrates that the depositor intended a trust, that purpose is as effective in the one case as in the other.

To evade the rules of the bank by carrying along different accounts in the names of others than the owner would not receive the sanction of the secretary. He knew the accounts were in excess of the $3,000 limit, and was explicit in advising Mr. Martin of that fact. It is improbable that, after the depositor knew well the effect of this deposit to the credit of William, he would persist in making it in that form unless he intended to set apart a fund for this nephew who was " worthy of being helped."

The judgment is reversed and a new trial ordered, with the costs

and disbursements of the appellant to abide the event and payable out of the general estate committed to the executor.

All concurred.

Judgment reversed and new trial ordered, with costs and disbursements of the appellant to abide the event and payable out of the general estate committed to the executor.