In the Matter of the Estate of Amos Johnson, Deceased.

Surrogate's Court, Montgomery County, June 26, 1933.

*George H. Hall*, for the executor and trustee.

*Leonard B. Moore*, for St. Johnsville Cemetery Association and Crum Creek Lutheran Church.

*H. Andrew Schlusberg*, for Bertha A. Johnson.

*Gordon A. Hough* for Hazel Johnson and others.

AULISI, S.  This proceeding is brought to construe the last will and testament of Amos Johnson.  The testator, a resident of the

village of St. Johnsville, N. Y., died on the 30th day of December, 1932, leaving a last will and testament which was dated July 14, 1932, and duly admitted to probate in this court on February 6, 1933. The testator left him surviving, as his only heirs at law and next of kin, a sister, four nieces and a nephew. The estate consists of real and personal property valued at about $18,000.

The first clause of the will provides for the payment of all just debts and the second clause reads as follows: " All of the rest, residue and remainder of my estate real, personal and mixed where-soever situate, of which I may die, seized or possessed or to which I may be entitled at the time of my death, I give, devise and bequeath to the First National Bank of St. Johnsville, N. Y., in trust nevertheless to invest and reinvest the same and to receive the rents, issues, income and profits therefrom and after defraying all lawful charges upon the same, pay the net income thereof one-half to the St. Johnsville Cemetery Association and the remaining one-half to the Crum Creek Lutheran Church at annual intervals and I give and grant unto said trustee or its successors full power and authority to sell, mortgage or lease any and all real estate or interest thereon on any terms and in any manner it or they in their discretion shall deem for the interest of said trust and I authorize and empower it or them to execute and deliver good and sufficient instruments therefor to carry out the intention of this provision."

The validity of the trust sought to be created by the testator is attacked by the heirs at law and next of kin and it is their contention that the beneficiaries under the trust are not legally incorporated; that they have no capacity to take; that the object and purpose of the trust fund attempted to be created are not charitable; that the trust income might be diverted to beneficiaries operating for private profit or as a business enterprise; that as charitable trusts they are void for uncertainty of beneficiaries and indefiniteness of purpose and that they violate the rule against perpetuities.

In my opinion all of these objections are untenable. The fundamental aim of the court attending and interpreting a will is to ascertain the intent of the testator. When that purpose has been made sure of, it must control unless it is contrary to public policy or to some established rule of law. If the will under construction is susceptible of two constructions, one of which will render it valid and the other invalid, the former will be adopted and this is especially so where charitable trusts and bequests are involved, as such beneficial objects are favored in the law.

The St. Johnsville Cemetery Association was duly incorporated in accordance with the provisions of chapter 133 of the Laws of 1847, and its certificate of incorporation dated September 13, 1858,

was filed and recorded in the Montgomery county clerk's office on September 16, 1858. The proof is uncontradicted that the corporation has functioned as a cemetery association for nearly seventy-five years; that it has been operated by a board of trustees, none of whom have ever been paid any salary; that it was not organized or operated for profit; that no salary is paid to any one except the sexton and a small sum to the secretary for keeping the books and records of the association; that neither by its certificate of incorporation nor by its by-laws is any person excluded from purchasing a lot or of burial in its cemetery; that there is no other cemetery association in St. Johnsville. The association charges a fee for each lot, a portion of the amount received is used for digging the grave and for its perpetual care and the balance for general improvement and embellishment of the whole cemetery. Any person, regardless of religious belief, may purchase a lot and be buried in this cemetery. It is, therefore, public, and, I think, charitable and benevolent.

The Evangelic Lutheran Church and Society of Crum Creek, Fulton county, N. Y., was duly incorporated in accordance with the provisions of chapter 60 of the Laws of 1813, and its certificate of incorporation, dated May 20, 1882, was recorded in the Fulton county clerk's office on May 24, 1889. It has been established by uncontradicted proof that this church is located at a hamlet or settlement known as Crum Creek, in the town of Oppenheim, Fulton county, N. Y.; that it is the only Lutheran church in said town or in the vicinity of Crum creek which flows through the hamlet and from which its name is derived; that it is commonly known, in the speech of the people in St. Johnsville, and elsewhere, as the " Crum Creek Lutheran Church; " that it is in existence as a church corporation; that divine worship and other religious services are held from time to time at the church property; that the testator knew of said church and occasionally attended entertainments and meetings held there. I am satisfied that the Evangelic Lutheran Church and Society of Crum Creek, Fulton county, N. Y., and the Crum Creek Lutheran Church is one and the same church. The misnomer is immaterial and, therefore, not a fatal defect. (*Kernochan* v. *Farmers' Loan & Trust Co.*, 187 App. Div. 668.)

The spirit of love and religion is the basis of charity. All churches are necessarily charitable and religious, otherwise there would be no reason for their existence. The very title of the church set forth in the certificate of incorporation is sufficient to indicate without question that its purpose is religious and charitable. I am of the opinion, therefore, that the object for which each of the beneficiaries is organized has been satisfactorily established by proof.

The two corporate beneficiaries have power to accept the benefits of the trust, although such power is not granted by their certificates of incorporation. The General Corporation Law, section 14, provides: "Every corporation as such has power though not specified in the law under which it is incorporated. * * * (3) To acquire property for the corporate purposes by grant, gift, purchase, devise or bequest, and to hold and dispose of the same, subject to such limitations as may be prescribed by law." This language applies to *every* corporation under whatever law it may be incorporated, and certainly includes the cemetery and church in question. The power of the cemetery to take is further shown by the Membership Corporations Law, section 76, reading in part: "A cemetery corporation may acquire * * * additional real or personal property, absolutely or in trust, in perpetuity or otherwise." In *Matter of Pearsall* (125 Misc. 634) the court said: "There appears to be no sound reason or principle of law to prohibit a cemetery corporation from accepting a gift of real and personal property under a will." The Religious Corporations Law, section 5, recognizes that a church may own and hold real and personal property.

The intention of the testator was charitable. The language used in his will is clear, explicit and unmistakable. There is nothing obscure or uncertain in its meaning. The testator's intent not being obscure, it is the duty of the court to carry out and effectuate his desire and purpose. There never has been any question that a church is a charitable organization, and as to the cemetery, section 114-a of the Real Property Law and section 13-a of the Personal Property Law specifically declare that bequests to cemeteries are deemed to be for charitable and benevolent uses.

After the decision in the case of *Tilden* v. *Green* (130 N. Y. 29) the Charitable Uses Act, now section 12 of the Personal Property Law and section 113 of the Real Property Law, was enacted and numerous cases have been decided involving such trusts. The subject has been thoroughly and exhaustively discussed. I, therefore, feel that it is sufficient to cite some of the leading cases without attempting to analyze them. (*Allen* v. *Stevens*, 161 N. Y. 122; *Matter of Griffin*, 167 id. 71; *Matter of Robinson*, 203 id. 380; *Matter of Cunningham*, 206 id. 601; *Matter of McDowell*, 217 id. 454; *Matter of Frasch*, 245 id. 174; *Matter of Durbrow*, Id. 469; *Matter of Pearsall*, 125 Misc. 634; *Matter of Olmstead*, 131 id. 238.) The language of Judge POUND in the case of *Matter of Durbrow* (*supra*, 474) applies to the will in question. "The intention to make a gift for charitable and religious purposes pervades and dominates the whole bequest and the court will give it effect if it is possible so to do by the application of the most liberal rules that the law

will permit." The heirs at law and next of kin rely a great deal upon the decisions in *Matter of Shattuck* (193 N. Y. 446) and in *Matter of Beekman* (232 id. 365). The *Shattuck* case has been many times relied upon to defeat testamentary trusts.

It has, however, been limited, distinguished and strictly confined to its own facts by subsequent decisions. The *Beekman* decision is not in point, as it was clearly shown in that case that the only persons who might be benefited by the corporation were the members of the Beekman family, and, therefore, it could not be a charitable corporation.

The beneficiaries contend that no time being set and there being no gift over mentioned in the will, the gift is absolute and carries the corpus of the estate. I do not agree with them. It is true that the general rule is that a gift of the income of property to a person without limitation as to time is a gift of the capital, where no other disposition of the capital is made. (*Matter of Allen,* 111 Misc. 93.) But·it has also been held that the rule is, however, subject to the qualification that where it is manifest that the intention of the testator was to give only the use, the rule must yield to the stronger force of intention. (*Paterson* v. *Ellis,* 11 Wend. 259, 298; *Locke* v. *F. L. & T. Co.,* 140 N. Y. 135, 145, 146.) I am of the opinion that the testator did not intend the corpus of the fund to pass to the beneficiaries at any time. There is nothing ambiguous about the will and the testator's intention is clear. He appointed his nephew executor, but for trustee he chose the First National Bank of St. Johnsville, N. Y., a sound banking institution of many years' standing. His intention, undoubtedly, was that the bank would continue to exist for many generations to come. The testator grants certain powers to the trustee and, unquestionably, there are duties for the trustee to perform. He specifically provides that after paying lawful charges, the *net income* be paid to the beneficiaries.

It is true that the will does not state the purposes for which the church and cemetery are to use the income from the trust fund. To that extent the purposes may be said to be indefinite. But, both on reason and authority, a bequest to a charitable corporation must be held to be for the purposes of the corporation.

In conclusion, I, therefore, hold and decide that the beneficiaries are legally incorporated; that they have capacity to and do take; that the fund is to be used for the general purposes of the beneficiaries as provided by law; that the corpus of the fund does not pass to the beneficiaries and that the trust attempted to be created is a valid charitable trust and should be administered in accordance with the terms of the will.

Decreed accordingly.