In the Matter of the Construction of the Will of JOSEPH P. CREVELING, Deceased.

AUBURN TRUST COMPANY, as Trustee under the Will of JOSEPH P. CREVELING, Deceased, Respondent; ALMA HITTNER et al., Appellants.

Fourth Department, January 7, 1959.

*Charles W. Avery* for appellants.

*Taber & White* (*Robert E. White* of counsel), for respondent.

HALPERN, J. This case presents a problem of a vanishing type. It will not recur in the future with respect to trusts created after September 1, 1958. The question in this case is whether, under the provisions of the decedent's will, the power of alienation was suspended for more than two lives. By chapter 153 of the Laws of 1958, the limitation of the suspension of the power of alienation to "two lives" was eliminated. Hereafter it will be possible for a person in the position of the testator in this case, leaving a widow and two children, to create a single

trust to run for all three lives. However, since the testator in this case died on March 30, 1918, the old rule is applicable and we are called upon to decide whether any part of the trust corpus was directed to be held in trust for more than two lives.

The pertinent provisions of the will read as follows: "I hereby authorize, empower and direct my said executor and trustee to sell and convey any and all real estate of which I may die seized, and invest the proceeds thereof, together with the personal property of which I may die seized in such securities as trust funds may be invested, as provided by law, the income therefrom to be divided equally from time to time among my wife Mary M. Creveling, my son John Le Roy Creveling and my daughter, Frances M. Creveling, equally, share and share alike, during their respective lives, and upon the death of either my said wife or either of my said children said income shall be divided equally between the surviving two, share and share alike during their joint lives. Upon the death of one of the remaining two, the one-third of my estate in which the one dying first received the life use, I give and bequeath to my then living next of kin. The one-third in which the one dying second received the life use, I direct that the income therefrom shall be given to the survivor during his or her natural life, and at the death of said survivor, I give and bequeath said remaining two-thirds of said rest, residue and remainder to my then living next of kin, as provided by law."

As has been stated, the testator died on March 30, 1918, leaving him surviving his wife, son and daughter. The testator's son died on February 22, 1950, and his widow died September 13, 1955. The daughter is still living.

In a construction proceeding brought by the Auburn Trust Company as trustee under the will, the Surrogate held that the trust provision was void for violation of the rule against perpetuities, and that the surviving daughter Frances was entitled to take the whole of the corpus of the trust.

The correctness of the latter part of the Surrogate's conclusion cannot be determined upon the basis of the facts disclosed in the record. If the trust were in fact void, it would have to be held that the estate passed by intestacy to the widow and the two children who were the distributees of the testator at the time of his death and not solely to the daughter who is the presently surviving distributee. But it may be that the daughter is the sole distributee or legatee of the estates of her mother and brother and would therefore be entitled to the part of the estate which passed to them by intestacy as well as to the part

which passed directly to her. However, that question is an academic one in view of the conclusion which we have reached that the Surrogate was in error in holding the trust void. In our opinion, the trust was wholly valid and should be carried out in accordance with its terms.

The doctrine of separable trusts is plainly applicable here. The trust provision should be construed as having created three separate trusts for the benefit of the testator's widow, his son and his daughter respectively, each of which is to run for not more than two lives. While the testator did not direct that, in the first instance, the corpus of the trust be divided into three parts, he provided for a division of the income into three equal parts, one part for each of the three beneficiaries, and he expressly provided that upon the death of the second to die, the share of the beneficiary who had died first should thereupon be released from the trust and paid outright to the testator's then living next of kin. This assured that no share of the corpus could be held for more than two lives.

So construed, the provisions of the will were valid. (*Matter of Horner*, 237 N. Y. 489; *Matter of Buttner*, 243 N. Y. 1; *Everitt* v. *Everitt*, 29 N. Y. 39; *Locke* v. *Farmers' Loan & Trust Co.*, 140 N. Y. 135; 1936 Report of N. Y. Law Rev. Comm., pp. 565–566; 4 Powell, Real Property, par. 533, p. 191; cf. *Meldon* v. *Devlin*, 31 App. Div. 146, affd. 167 N. Y. 573; Chaplin, Suspension of Power of Alienation [3rd ed.], § 108, p. 85.)

As a matter of fact, the suspension of the power of alienation under the testator's will did not run for as long a period as was permissible under the law. The testator could have provided that upon the death of the second to die, one half of the share of the first to die should be released from the trust and paid outright and that the remaining one half should continue to be held in trust for the surviving beneficiary. This is permissible under the doctrine of subshares. So long as each subshare does not run for more than two lives, the provision is valid (*Everitt* v. *Everitt, supra*; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Orr* v. *Orr*, 147 App. Div. 753, affd. 212 N. Y. 615). However, in this case, the testator directed the release and the payment outright of the whole of the share of the first to die upon the death of the second to die. Thus, the one-half part of that share upon which the surviving beneficiary had been receiving the income was directed to be released from the trust, even though, under the authorities cited, it could have been validly provided that that subshare should continue to be held until the death of the surviving beneficiary.

The remaining question raised by the appellants is the construction of the term "my then living next of kin" in the provision for the payment outright of the share of the beneficiary first to die, upon the death of the second beneficiary to die. The appellants are the nieces and nephews of the testator, the children and grandchildren of the deceased brother and sister of testator. It is their contention that they are entitled to take as the " then living next of kin ". The appellants recognize that Frances, the surviving beneficiary, is in fact the sole next of kin of the testator. However, the appellants argue that it would be incongruous to give a share of the trust corpus outright to one of the life beneficiaries of the trust. It is the appellants' contention that the provision should be construed as directing that the corpus go to the testator's next of kin as determined after excluding the life beneficiaries.

We see no incongruity in giving a share of the corpus to the surviving beneficiary. The three life beneficiaries were the primary objects of the testator's concern. Being required by law to provide for the release from the trust of each share after it had run two lives, the testator provided that the share so released should be paid outright to his then living next of kin. Presumably, if the " two lives " rules had not required the distribution of part of the trust corpus upon the death of the second to die, the testator would have directed that the whole of the corpus be held in trust for the benefit of the last survivor. The law prevented the testator from doing this but, in this situation, there is certainly no incongruity in construing the provision as directing that the share which was released from the trust be paid outright to the surviving beneficiary.

There is presented in this case no such question as that in *Matter of Carlin* (6 A D 2d 281) as to the time when the next of kin should be ascertained. Here the time of ascertainment is expressly specified in the will and there is no dispute about it between the appellants and the respondent. The words " then living " in the will plainly fix the time when the distribution is to take place as the time of ascertaining the next of kin. The testator's daughter Frances was the sole next of kin then living and she is entitled to the payment outright of the one-third share of the trust of which the " one dying first [had] received the life use."

The remaining two-thirds is to continue to be held in trust and the income is to be paid to Frances. Upon her death, the corpus will be payable to the " then living next of kin " of the testator. Such of the testator's nieces and nephews as may then be surviving will be entitled to share in that two-thirds.

The decree appealed from should be reversed on the law and the matter remitted to the Surrogate for the entry of a decree construing the will in accordance with this opinion.

All concur. Present — McCurn, P. J., Kimball, Bastow, Goldman, and Halpern, JJ.

Decree insofar as appealed from reversed on the law, with costs to each party filing a brief payable out of the estate, and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion.