(110 App. Div. 533.)

In re HUNT.

In re INGERSOLL'S WILL.

(Supreme Court, Appellate Division, Fourth Department.    January 17, 1906.)

1. EXECUTORS AND ADMINISTRATORS—PARTIAL DISTRIBUTION—JURISDICTION OF SURROGATE.

   The Surrogate's Court may not on a judicial settlement of the accounts of a testamentary trustee order a partial distribution of the assets; the statute making no provision therefor, and Code Civ. Proc. § 2472, providing that such court must exercise its jurisdiction in the cases and manner prescribed by statute.

2. SAME—FIXING VALUE OF PROPERTY.

   The Surrogate's Court may not, there being no statute permitting it, fix the value of property for the purpose of distribution.

3. SAME—TESTAMENTARY TRUSTEES—COMPELLING DELIVERY OF PROPERTY—PROCEDURE.

   The procedure provided by Code Civ. Proc. §§ 2804–2806, petition to the Surrogate's Court, to compel delivery of property by a testamentary trustee to a person entitled thereto, is the only proper procedure.

Appeal from Surrogate's Court, Herkimer County.

In the matter of the final judicial settlement of the accounts of James G. Hunt, sole surviving trustee of John Ingersoll, deceased. From an order requiring such trustee to deliver· to Loton S. Hunt certain of the assets of the trust pending the judicial settlement, the trustee appeals.   Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

J. I. Casey, for appellant.
W. H. Wheeler, for respondent.

NASH, J.   James G. Hunt, as sole surviving trustee under the will of John Ingersoll, deceased, filed his petition for the judicial settlement of his accounts as such trustee in the Surrogate's Court of Herkimer county, and with the petition filed his account, in which it appears that the trust fund in his hands is invested in securities, except $669.14 in cash, in all at the inventoried and purchase price of the securities, amounting to $31,592.69, from which amount the trustee begs leave to credit himself or charge himself, as the case may be, with any depreciation or appreciation, shown to have accrued upon converting the said securities into cash, as compared with the values set upon them in this account and statement, as so inventoried and purchased, and particularly with respect to the securities listed as "$11,000 in U. S. registered 4's," which were an actual investment made by the decedent testator, and were inventoried to the trustee at 121¼, and which are now believed by him to be marketable at much less than that sum, and not greatly in excess of their par value.   It is stated in the petition that upon the death of Mary Hunt the trust estate vested in her heirs, the trustee, and Loton S. Hunt, "each of whom is now entitled to one equal half part thereof."   The citation issued upon filing the petition, and account was returnable July 10, 1905, and the proceeding was adjourned to July 31st, at

which time the trustee was directed to appear in the Surrogate's Court for the purpose of being examined in regard to his account, and with a view of determining the necessity of filing objections thereto. On the 29th of July Loton S. Hunt filed objections to the account, in which it is alleged that, by reason of the neglect of the trustee, there has been a loss of principal of the securities railroad and United States registered bonds amounting to $2,565.25. The contestant also, by his objections, seeks to charge the account of the trustee with other sums amounting to several thousand dollars, and to deprive him of commissions. July 31st the parties appeared before the surrogate. No examination of the trustee was required or had. Loton S. Hunt, in person, moved the court for an order directing an immediate division and transfer of a portion of the securities comprising the estate. The trustee opposed the motion, and objected thereto, upon the ground that the surrogate had no jurisdiction, power, or authority to make such an order, and that the trustee was, as a matter of right, entitled to retain the securities and all the property and assets of the trust until a final order of distribution should be made. The court thereupon made an order as follows:

"The trustee herein having filed his account of his proceedings as such trustee, together with a petition for the judicial settlement of said account, and a citation having been issued and returned with proof of due service of the same on all the parties to this acounting, and Loton S. Hunt, one of the beneficiaries under said trust having appeared and filed objections to the account as filed, now, on the motion of Loton S. Hunt, attorney in person, it is ordered that pending the hearing upon said objections, and within five days from the service upon him of a certified copy of this order, said James G. Hunt, as trustee of the estate of John Ingersoll, deceased, duly assign, transfer, and deliver to said Loton S. Hunt, one registered United States government bond, of the face value of $5,000.00, and three Chicago, Rock Island & Pacific refunding bonds, of the face value of $1,000.00 each, and which are a part of the assets of said estate, that said trustee take a receipt for the same, and that upon the entry of a decree of judicial settlement herein said trustee be credited with the value of said property, as may hereafter be determined by the court."

Subsequently, upon motion, the order was resettled, so as to recite the appearance of counsel and objections made in behalf of the trustee in opposition to the order on the "grounds that the surrogate had no jurisdiction or authority to make such an order, and the trustee was entitled as a matter of right to retain said securities and all the property and assets of said trust fund until final order of distribution should be made." The Surrogate's Court did not have jurisdiction, power, or authority to make the order.

It has always been held that Surrogate's Courts have only such jurisdiction as is expressly conferred upon them by statute, and it is expressly provided by section 2472 of the Code of Civil Procedure that the jurisdiction must be exercised in the cases and in the manner prescribed by statute. The Code provides, when, upon the judicial settlement of the accounts of an executor or administrator, the court may order delivery of specific property:

"Sec. 2744. In either of the following cases the decree may direct the delivery of an unsold chattel, or the assignment of an uncollected demand, or any other personal property, to a party or parties entitled to payment or distribution, in lieu of the money value of the property: (1) Where all the parties

interested, who have appeared, manifest their consent thereto by a writing filed in the surrogate's office.    (2) Where it appears that a sale thereof, for the purpose of payment, or distribution, would cause a loss to the parties entitled thereto.    The value must be ascertained, if the consent does not fix it, by an appraisement under oath, made by one or more persons appointed by the surrogate for the purpose.".

This section of the Code is, by section 2811, made applicable to the judicial settlement of the accounts of testamentary trustees.    The executor or administrator is required by due course of administration to reduce the assets to cash ready for distribution upon the judicial settlement of his accounts, except for some cause shown, in which case section 2744 becomes applicable.    The procedure to compel the delivery of property by a testamentary trustee to a person entitled thereto by the terms of a will, is regulated by sections 2804–2806 of the Code.    The statute does not make any provision whatever for a partial distribution of the assets of an estate by a testamentary trustee upon the judicial settlement of his accounts.    There is no provision of the statute which permits a Surrogate's Court, as provided by the order, to fix the value of property for the purpose of distribution.    The assets of the trust should remain in the custody of the trustee until the final decree, when the proper procedure may be had as to the distribution of any specific property remaining in his hands belonging to the trust.

The order should be reversed.

Order reversed, with $10 costs and disbursements to the appellant. All concur.