(121 App. Div. 96)

## In re HUNT.

## In re INGERSOLL'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department.   July 9, 1907.)

1. TRUSTS—ACCOUNTING BY TRUSTEE.

Where, on an accounting by a trustee, the cash reported included an item which confessedly belonged to the estate of the deceased cestui que trust, a decree making no provision for payment of such sum to decedent's personal representatives, but treating the amount as the property of the remaindermen, was erroneous.

2. SAME—DISTRIBUTION.

Where a trust estate consisted of various securities in which the major part was invested, a distribution decree, merely designating the fractional shares of the parties entitled to receive the property and directing transfer of the securities to them in bulk, in the absence of written consent of all the parties filed with the surrogate, or showing that a sale would result in loss, as provided by Code Civ. Proc. § 2744, which declares the only cases in which the transfer of an uncollected demand can be directed by the court, was erroneous.

3. SAME—COMMISSIONS—DIFFERENT CAPACITIES.

Where a will bequeathed property in controversy to executors in trust during the life of two beneficiaries, with a provision that on the death of one of them the trust should terminate as to half of the property, which was to go to the heirs, of the deceased beneficiary, whereupon the executors should hold the other half in trust for the other beneficiary for life, when the trust should be similarly terminated, the death of the first beneficiary for life operated as a severance of the fund, so that the executor held the share of the surviving beneficiary as trustee, and was therefore entitled to commissions thereon, both as executor and as trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 453.]

4. SAME—PROPERTY SUBJECT TO COMMISSIONS.

Commissions should be allowed an accounting trustee on the value of the personal property contained in the trust fund, but not on the value of real estate included therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 445–453.]

5. SAME—DISBURSEMENTS.

On an accounting by a trustee it was improper for the court, in the absence of a valid reason, to refuse to allow the trustee such costs, disbursements, and allowances as are usually allowed in such cases.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 324.]

6. SAME—DEPRECIATION OF SECURITIES.

Where a will created a trust, included certain government and railroad bonds, and directed that the good investments should remain, the trustee was not chargeable with a depreciation in the value of such bonds, due to a decrease in the premiums thereon, owing to their approaching maturity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 310–312.]

Spring, J., dissenting in part.

Cross-Appeals from Surrogate's Court, Herkimer County.

Application for the judicial settlement of the accounts of James G. Hunt, as sole surviving trustee of the estate of John Ingersoll, deceased. From an order settling the accounts, James G. Hunt, as accounting trustee, and Loton G. Hunt, as administrator of the estate of Mary Hunt, deceased, prosecute cross-appeals.   Reversed.

See 97 N. Y. Supp. 403.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

J. I. Casey, for accounting trustee.

W. H. Weller, for Loton S. Hunt.

ROBSON, J.    James G. Hunt is the survivor of the two persons who are named as the executors and trustees in the will of John Ingersoll, deceased.    His coexecutor and cotrustee was John D. Ingersoll.    The testator died October 21, 1883, leaving him surviving, as his heirs at law, one son, John D. Ingersoll, above named, and one daughter, Mary Hunt. His will was shortly thereafter duly admitted to probate, and letters testamentary thereon were duly issued to the executors therein named. After the usual directions for the payment of his debts, the testator by the second item of his will devised and bequeathed to his son and daughter all his estate, real and personal, "to share the same equally between them in the manner and with the restriction and condition hereinafter mentioned."    The next item of his will is as follows:

"Third. I give and devise the aforesaid real and personal estate to my executors in trust for the benefit of my son John D. Ingersoll and my daughter Mary Hunt above named, to be received, used, employed and paid out in the manner hereinafter designated and directed, to wit: 'To be received as a trust fund, the present good investments to remain, and such parts of the said estate as remains now uninvested in real estate securities, government stocks or other unquestionable securities.    And the said executors as such trustees are each and every year to pay to the said John D. Ingersoll and Mary Hunt each the one-half the net income and proceeds of my said estate."

The will then proceeded with particular directions as to the application and disposition of the share of the income to which the said John D. Ingersoll might become entitled.    The apparent purpose of these provisions was to so limit his interest in the estate that it could not be used, or become available, for any other purpose than his support and maintenance.    The executors were given a power to sell, if they should deem it best, any and all or such parts of his real estate "as they may deem it to the advantage of the heirs—and when sold the proceeds to be invested in the securities above named."    The succeeding clause of his will is as follows:

"Eighth. At the death of the said John D. Ingersoll or Mary Hunt the trust estate and the trust power of the said executors over the estate of the deceased shall end and be void, and the property remaining at their decease shall become the property of the child or children of the deceased; if none be living then to the heirs at law of the said John D. and Mary Hunt unless they or either of them dispose of their interest in said estate by will during their lives."

The tenth item of the will designated the executors.    John D. Ingersoll died April 11, 1885, leaving his son, Fred T. Ingersoll, his sole heir at law and sole beneficiary under his will.    Mary Hunt died intestate April 25, 1905, leaving as her only heirs at law her sons, James G. Hunt and Loton S. Hunt, above named.

The provisions of this will have received judicial construction in various proceedings, either directly with that end in view, or incidentally where their construction was to some extent involved, and the rights and interests of the parties interested in the estate have been further

expressed and determined by various agreements. It is unnecessary to refer to these proceedings and agreements at length, further than to say that, so far as the parties to this appeal are concerned, it must be treated as determined that testator's entire estate, consisting of both real and personal property, was, after deducting debts and expenses properly chargeable thereon, given to the executors named in his will, in trust to hold and manage the same during the joint lives of his son and daughter, and to pay the income thereof in equal shares to these two last-named persons; that the trust in the whole estate terminated upon the death of John D. Ingersoll, and his son and legatee, Fred T. Ingersoll, thereupon became entitled to an undivided one-half of the corpus thereof; that the trust in the remaining one-half of said estate continued till the death of Mary Hunt, and she was entitled to the income accruing therefrom up to the date of her death; and that upon her death her two sons, James G. and Loton S. Hunt, became entitled to have and receive the corpus of that trust fund.

Shortly after the death of John D. Ingersoll proceedings were had which resulted in the division of the whole trust estate into two portions and the allotment and transfer to Fred T. Ingersoll of the securities and parcels of real estate making up one equal share thereof. The remaining share was retained by James G. Hunt, the survivor of the two executors and trustees, to fill out the unexpired trust during the life of Mary Hunt. This division was made by agreement of all parties who were then interested in the trust estate, including both parties to this appeal, and was further embod'ed in and ratified by a decree of judicial settlement of the accounts of the surviving executor and trustee, made by the Surrogate's Court of Herkimer county pursuant to, and as directed by, the agreement of all parties in interest. Following the terms of the agreement the executors received on that settlement full commissions as executors, computed upon the aggregate value of the whole estate, including real estate. These commissions were apportioned, in the shares agreed upon, between the surviving executor and the estate of his deceased coexecutor. Since the division of the estate James G. Hunt has continued to hold and manage the half thereof, and has accounted yearly with his mother for the income it produced, retaining each year full commissions on the income.

Soon after the termination by the death of Mrs. Hunt of her interest in the further income of the fund, these proceedings were begun in Surrogate's Court by James G. Hunt, as sole surviving trustee, to procure the final judicial settlement of his accounts. On the return of the citation Loton S. Hunt appeared by attorney, and, on the statement that an examination of the accounting party was desired before filing objections, further hearing was adjourned to July 31, 1905. A few days before the date of adjourned hearing objections to the account were filed by Loton S. Hunt, which alleged, among other things, that by reason of the neglect of the accounting party there had been a loss to the principal of the trust fund by reason of the depreciation in value of railroad and United States registered bonds amounting to $2,562.25; and certain payments and disbursements, which the trustee stated had been made by him and for which he asked to be credited.

amounting to several thousand dollars, were also objected to. The allowance to the trustee of any further commissions on the trust property was also opposed. On the adjourned day no examination of the trustee was suggested, and none was had; but on the application of Loton S. Hunt an intermediate order, directing the transfer and delivery to him by the trustee of certain bonds, which were a part of the fund, was obtained. This order was made despite the objection of the trustee, who thereafter appealed to this court from the order, and there obtained a reversal thereof. Matter of Hunt, 110 App. Div. 533, 97 N. Y. Supp. 403. Further proceedings in the accounting in Surrogate's Court resulted in an order, entered by consent of parties, sending the matter to a referee, thereby appointed, to hear the same and report thereon, subject to confirmation or modification by the surrogate. On the coming in of the referee's report the surrogate modified the recommendations thereof by directing that no order or direction be made as to any income of real or personal estate not included in the account, nor in relation to the disposition of the real estate included in said account, and confirmed the report, as modified, in all respects. A decree of the court accordingly was then entered. Proper exceptions were taken to raise the questions hereinafter discussed. The decree provided, among other things, that:

"James G. Hunt, as trustee of the last will and testament of John Ingersoll, deceased, is directed to assign, transfer, and deliver the remainder of the property described in the foregoing summary, after making the payment and deduction aforesaid [which was the payment of referee's and stenographer's fees only], to James G. Hunt and Loton S. Hunt individually."

The trust estate, as appears by the account filed, consisted of bonds and mortgages, stock in corporations, railroad and government bonds, and a very small relative proportion of cash on hand and money on deposit with a designated financial institution. Included in the cash reported by the trustee as on hand is the sum of $71.65, which confessedly belongs to the estate of the deceased cestui que trust, Mary Hunt; and yet the decree makes no provision for its payment to her representatives, but treats that, like the remainder of the fund, as property of the remaindermen, James G. and Loton S. Hunt. If this were the only objectionable portion of the decree, a trifling modification thereof would correct the error. But the decree, as we have already observed, directs the assignment and transfer to the two designated persons of all the fund, which includes, of course, the securities in which by far the major part thereof is invested. One of the objects of an accounting in Surrogate's Court by a trustee is manifestly that the property involved in the trust, for which the trustee is accounting, may be in that proceeding divided among and distributed to those who are entitled to receive it. The statute confers on that court ample power to accomplish this result. This purpose is not accomplished by directing transfer of the property in bulk to the parties entitled thereto, and simply designating their fractional shares therein. If this practice were to obtain, instead of a division of the property in that court, resort to a subsequent action in order to obtain such partition and division would in many cases be necessary. If it be urged that the decree directs the transfer of specific uncollected ac-

mands, it appears that no facts which might, if present, warrant such disposition, appear in the case. The only cases in which such transfer of an uncollected demand can be directed by that court are specified in section 2744 of the Code of Civil Procedure. The limitations of the power of that court thereby were fully pointed out when this court considered the former appeal in this matter, to which we have already referred. For the reasons there stated we hold that this direction of the court by its decree was unauthorized and constitutes reversible error.

We are also of the opinion that the surrogate erred in refusing the trustee commissions, as trustee, upon the value of the personal property forming a part of the trust estate. It is well established that double commissions to the same persons, first in the character of executors and then as trustees, can be awarded only when the will contemplates a severable and separate action in each capacity. This intention must not only be manifested, but possession and holding of the trust estate must be changed, either expressly or by implication, from that as executors only to that of trustee of the trust. Johnson v. Lawrence, 95 N. Y. 154; Laytin v. Davidson, 95 N. Y. 263; McAlpine v. Potter, 126 N. Y. 285, 27 N. E. 475. Executors may have imposed upon them, by the will which appoints them, in addition to their ordinary duties as executors, those which otherwise would be distinctively those of a trustee of a trust thereby created; and, if he accepts the executorial appointment, the performance of those duties becomes at once a function of, and appertain to his position as, executor. In cases where these facts alone appear, his compensation is necessarily limited to that of executor; and double commissions are not allowed. McAlpine v. Potter, supra. But, if the fair reading of the testamentary provision shows that at some time the executor is to take, hold, and manage the fund in filling a separate and separable trust beyond and distinct from the duties which the will discloses he is to perform in his capacity as executor, and the separation or setting apart of the fund is made, or as matter of law is to be regarded as made, then his right to double commissions follows as an incident. Laytin v. Davidson, supra.

It seems to be conceded that the will here in question contemplated that the whole estate should be held and managed by the executors as such, at least until the division thereof, directed by the eighth item of the will above quoted, on the death of one of the life beneficiaries; and it was in fact so held and managed by them. When John D. Ingersoll died, then, following the provisions of the will, it became necessary to divide the estate; and the division then made necessarily left one-half of the estate to be managed and administered as a separate trust for the benefit of Mary Hunt, the life beneficiary, during her life, and on her death to distribute the corpus of the fund, so far, at least, as the same consisted of personal property, to those entitled thereto. This necessarily involved and contemplated a severance of the fund, which we think also involved a separation of the functions of executor and trustee, and a separate holding thereafter of that part of the estate by the surviving executor, not in his capacity as executor, but as a trustee of that separate fund. That this was the understanding and agreement of the parties at the time the division of the estate was made,

and the separate fund erected, is apparent from an examination of the proceedings then taken. The decree of judicial settlement of the executor's accounts, then entered, which conforms to the agreement made by all parties, including, as we have said, Loton S. Hunt, the present objecting party, allows full commissions to the executors as such and in terms discharges the sureties upon each of the bonds theretofore given as executors by John D. Ingersoll and James G. Hunt, respectively, and further provides that the trust created by the will in the one-half of the estate "continues until the death of Mary Hunt as provided and set forth in said will, and James G. Hunt is the sole surviving executor of said will and trustee of said trust."

A further consideration lends some slight aid in arriving at the understanding of these parties, which is disclosed by reference to various agreements in regard to the trust estate, to which Loton S. Hunt is a party, in which James G. Hunt is referred to as trustee of the particular trust. That the surviving executor was not actually discharged from further duty or responsibility as executor in reference to some uncompleted business, properly belonging to his office as executor, is not decisive that he did not then assume in reference to this fund the duties of trustee, as distinguished from those as executor. The separate trust fund was erected and set apart, and the property going to form it specificallly designated by the agreement, pursuant to which the decree was made. As to that fund and the property that should thereafter compose it the decree was final and conclusive, and nothing remained to be done to completely set apart the fund, except the actual transfer of the securities to himself as trustee. Whether or not that transfer was in fact made is immaterial. Laytin v. Davidson, supra. Commissions should therefore be allowed the acounting trustee on the value of the personal property included in the trust fund, when the distribution thereof is hereafter properly directed. No commissions should be allowed on the real property, forming part of the trust estate.

In addition to refusing commissions to the accounting trustee, the surrogate has also declined to make any allowance to him of costs or disbursements, further than the direction that the referee's and stenographer's fees are to be paid from the fund. No valid reason appears why the costs and allowances usually provided in such cases should not be made to the trustee on his accounting; and that matter should be corrected on the rehearing, which is hereinafter directed.

Loton S. Hunt, as an appellant, insists that the surrogate erred in failing to charge the accounting trustee with the depreciation in value of certain government and railroad bonds. These bonds were securities which came to the executors as part of their testator's estate. They were by the will instructed that "the present good investments were to remain." No question is made as to the merit of these investments; but as the time for their payment approached the premium gradually decreased. This decrease is the loss in value complained of. This question was properly disposed of by the surrogate. Matter of Stevens, 187 N. Y. 471, 477, 80 N. E. 358; McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230; Robertson v. De Brulatour, 111 App. Div. 882, 895, 98 N. Y. Supp. 15.

The decree of the Surrogate's Court should be reversed, with costs to James G. Hunt, appellant, payable out of the estate, and the matter remitted to the Surrogate's Court of Herkimer county for further proceedings thereon.

Decree of Surrogate's Court reversed, with costs to the appellant James G. Hunt, payable out of the estate of deceased, and remitted to the Surrogate's Court of Herkimer county for further proceedings thereon. All concur, except SPRING, J., who dissents as to the allowance of double commissions to the surviving trustee.