In the Matter of the Estate of William H. Loomis, Deceased.

Surrogate's Court, Kings County, February 19, 1935.

*Wingate & Cullen,* for the National City Bank of New York.

*Thomas M. Day,* for the Loomis Institute.

*Joseph A. Kennedy,* special guardian for Gertrude Alice Clark and another.

Wingate, S. In a former construction proceeding involving the interpretation of this will (*Matter of Loomis,* 149 Misc. 417) this court had occasion to interpret the remainder devolution under subparagraph " 24 " of item " third." The two questions of interpretation now presented concern subparagraphs " 3 " and " 5 " of this same item.

The observations respecting the general testamentary structure made on the former occasion are of equal present pertinence and need not be repeated here. Suffice it to note that the introductory paragraph of the item provided that the gifts made in the succeeding fifty-six subparagraphs should be conditioned on the survival of the testator by the subsequently named beneficiaries and that in the event of their predecease the gifts provided for them should "go to and form a part of" the residuary estate which, under item "seven" was payable to Loomis Institute.

The third subparagraph makes the following gift:

"3. To my Trustee hereinafter named, One hundred (100) shares of the Preferred Stock of the Atchison, Topeka and Santa Fe Railway Company, in Trust, however, to collect the income therefrom and make semi-annual remittance to my nephew, Horace Beardsley, of Sussex, New Jersey; and if my said nephew, Horace Beardsley should not be living at the time of my decease, I direct that the principal of the foregoing bequest contained in this paragraph (3) shall go to his legal heirs at law."

The "fifth" subparagraph is in all respects identical with the "third," except for the substitution of testator's niece, Alice Beardsley Wood, in place of his nephew, Horace Beardsley.

Both of the named *cestui que trustent* have now died and the question of interpretation presented in respect to each trust is the manner of devolution of the remainder, whether it shall pass to the representatives of the life tenant or to the general residuary legatee under the will.

The fifty-six subparagraphs of item "third" make six varieties of gifts, as follows:

1. Subparagraphs 9–21, inclusive, 25–54, inclusive, and 56 give outright legacies.

2. Subparagraphs 7 and 8 make outright gifts with the proviso that if the named legatee shall have predeceased the testator, the subject-matter of the gift shall pass to the heirs of the primary legatee.

3. Subparagraph 24, which was construed in the former opinion of this court, gives a life estate with remainder to the children of the life tenant, and, in default of such children, gives the remainder to the residue of the estate.

4. Subparagraphs 1 and 6 erect trusts with income payable to named *cestuis* for life, the principal passing to their heirs upon their respective deaths.

5. Subparagraphs 22, 23 and 55 erect trusts with income payable to named *cestuis* for life, the principal being payable under the residuary item of the will upon their respective deaths.

6. Subparagraphs 2, 3, 4 and 5 are in the form presently submitted for construction, with income payable to named *cestuis*, with no express provision in the respective paragraphs themselves for disposition of the remainders, but directions for alternative outright gifts of the principal in the event of the death of the named *cestuis before* the testator.

It is the contention of the executor and special guardian that the devolution of the remainders in the class 6 gifts should correspond with those of class 4, while the residuary legatee insists that they should devolve as in class 5.

The legal principle invoked by the protagonists of the former contention is that enunciated in *Hatch* v. *Bassett* (52 N. Y. 359, 362), that "A general gift of the income, arising from personal property, making no mention of the principal, is * * * a general gift of the property itself." This rule has many times been cited and followed. (*Cammann* v. *Bailey*, 210 N. Y. 19; *Locke* v. *Farmers' L. & T. Co.*, 140 id. 135; *Matter of Sackett*, 201 App. Div. 58; *Matter of Goldmark*, 186 id. 447; *Matter of Ingersoll*, 95 id. 211; *Matter of Harris*, 138 Misc. 287.) In all of the cases just noted, however, which are perhaps among the authorities most frequently advanced as establishing the rule, the gift was made either in the residuary clause of the will, or no residuary clause whatsoever was contained in the document. Furthermore, no authority has been called to the attention of the court, and it is familiar with none which is a precedent controlling upon it, in which this principle has been applied in the absence of similar circumstances.

In this situation it would appear obvious that the rule, in so far as it is followed, is merely an additional application of the familiar canon of construction which indulges an inference of intention of the testator to avoid intestacy. " It is a natural inference from customary behavior that when a person has taken the trouble to make a will, he intends to dispose of his entire property thereby." (*Matter of Frank*, 153 Misc. 688, 690, and authorities cited.) When, therefore, a person has made a general gift of the income, arising from personal property, making no mention of the principal, and such principal would pass as intestate property unless it were determined to pass to the donee of the income, an inference of intention to make such principal gift will be indulged.

The present is, of course, not a case of this type since by reason of the general residuary clause of the will every portion of the testator's estate not otherwise given is devised and bequeathed to the residuary legatee, wherefore the possibility of any intestacy is expressly averted.

The directions of the two questioned clauses are for the payment of the "income" on the specified securities to the named individuals respectively. Although the language of the gifts does not expressly terminate the trust upon the death of the life tenants, such a condition will, of course, be implied (*Matter of Smith*, 131 N. Y. 239, 246; *Felter* v. *Ackerson*, 35 App. Div. 282, 284; *Matter of Balsamo*, 136 Misc. 113, 115; cf. *Sawyer* v. *Cubby*, 146 N. Y. 192, 197; *Burke* v. *O'Brien*, 115 App. Div. 574, 576; *Coston* v. *Coston*, 118 id. 1, 4; *Matter of Lally*, 136 id. 781, 786; affd., 198 N. Y. 608; *Appell* v. *Appell*, 177 App. Div. 570, 572), since income cannot be paid to a named person when he has ceased to exist.

It follows, therefore, that there is here present merely a gift of the income of the specified securities for the lives of the respective individuals. The additional phraseology of the particular sub-paragraphs is not illuminative of what the testator had in mind respecting the disposition of the remainders, since the added words effected merely conditional gifts of the principal based on contingencies which have not eventuated. There may be ground for speculation in the alternate provision as to why the testator was willing, for example, to give outright ownership of the trust corpus to the heirs of Horace and Alice, respectively, but limited his gifts to their ancestors to the life use of the property. Perhaps he had a reason, perhaps it was merely a mistake of the scrivener. Which it was is a matter for pure speculation, and conjecture can form no basis for a determination of fact respecting an affirmative testamentary intent which is to be ascertained only from the words employed when read in the light of the circumstances surrounding the testator at the date of execution of the document. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissman*, 137 Misc. 113, 114; affd., 232 App. Div. 698; *Matter of Shumway*, 138 Misc. 429, 434; *Matter of Weil*, 151 id. 841, 844.)

As this court has frequently had occasion to observe in other connections, the testator, in his disposal of each item of property, had two things which he might lawfully give, namely, the life use thereof for not exceeding two lives in being at his death, and the ultimate possessory enjoyment thereof. (*Matter of Kramer*, 153 Misc. 606, 607.) In the gifts in the questioned items he exercised merely the former possibility. So far as items third and fifth are concerned, the second species of property remains wholly untouched. It was, therefore, an item of property unaffected by the main body of the will and consequently subject to the omnibus direction for devolution inserted in the seventh item.

Enter decree on notice.