In the Matter of the ESTATE OF LILLIAN P. DENNISTON, Deceased.

Surrogate's Court, Kings County, October 21, 1935.

*Twyeffort & Du Bois,* for the petitioners.

*Francis J. Garcia,* special guardian.

WINGATE, S. The provisions of the will which are here submitted for interpretation are novel, and aptly illustrate the fact that testamentary draftsmanship reverses the familiar aphorism that there is nothing new under the sun.

By the third item of her will the testatrix erected a trust of the remainder of her estate " for the benefit and advantage of my children, the income thereof to be used and applied, if necessary, to the education, maintenance and support of my said children during their minority."

The document then continues:

*"Fourth.* Upon the coming of age of my oldest child, that is to say, the age of twenty-one years, I direct my executors hereinafter named to divide my said estate into as many shares or portions as there shall be children surviving me, share and share alike, and to pay unto my said children such equal shares or portions of my said estate in the following manner, to wit; As each child shall come of age, that is, the age of twenty-one years, I direct my executors to pay to such child one-half of the portion or share so allotted by me, and to pay to said child the remainder or balance of the said equal share when such child reaches the age of thirty years.

*"Fifth.* Upon the coming of age of my youngest child and the payment to said child of his or her equal share or portion of my estate as above directed, the trusts herein created shall cease and determine."

Testatrix was survived by five children, all of whom are now living. The eldest, Margaret Denniston, reached the age of twenty-one on December 24, 1934. Their father felt himself fully capable of supporting and educating his children, for which reason none of the income of the trust has been used for this purpose and has been accumulated up to the present time. The question which chiefly concerns the parties is as to the proper disposition of this income.

As this court has frequently pointed out, a testator, in giving any portion of his property, has the power under our statutes of making two varieties of gift. He may give the life use thereof for not exceeding two lives in being at his death, and may give the final possessory enjoyment thereof after the termination of such two lives. (*Matter of Loomis,* 154 Misc. 549, 552; *Matter of Kramer,* 153 id. 606, 607.) So long as ultimate possessory enjoyment

must vest in possession within such period of two lives in being, at the death of the testator, the direction will be sustained. (*Matter of Terwilligar*, 135 Misc. 170, 175; affd., 230 App. Div. 763; *Matter of Davison*, 134 Misc. 769, 771; affd., 230 App. Div. 867; *Matter of Milhau*, 151 Misc. 283, 286.)

By the composite directions of items third and fourth of her will, the testatrix erected two varieties of trusts. The corpus of the first consisted of the entire remainder of her estate. Its duration was the minority of her eldest surviving child. Upon the termination of this trust by the happening of the specified event, to which the law adds, as an alternate contingency, the death of the individual chosen as the limiting life (*Crooke* v. *County of Kings*, 97 N. Y. 421, 437; *Matter of Innerfield*, 153 Misc. 706, 709), a series of secondary trusts was to be carved out of the corpus of the first, the number of such trusts to be as great " as there shall be children surviving."

It is the contention of the special guardian that the several secondary trusts vested in the children of testatrix who survived her. With this, the court is unable to agree. The obvious intent of the testatrix was to dedicate the remainder of her estate solely to the benefit of her children. Were it to be held that vesting occurred during the continuance of the primary trust, then, if any of the younger children had died prior to its determination, its share of the remainder would presumably have passed to its father (Dec. Est. Law, § 83, subd. 3) for whom the testatrix had, in other parts of the will, made the only provision which she intended.

The direction respecting the erection of the secondary trust is merely one to divide upon the happening of the specified event, which, in the absence of pertinent countervailing considerations, imports futurity. (*Matter of Hopner*, 148 Misc. 748, 750; *Matter of Gurlitz*, 134 id. 160, 163.) Here, not only do no such considerations appear, but employment of this canon of construction is consonant with testatrix's obvious wish.

It follows, therefore, that vesting occurred only upon the termination of the primary estate, and that the gift which was to take place at that time constituted a gift to a class. (*Matter of Nebe*, 155 Misc. 392, 394, and authorities cited.)

This determination, however, does not in any wise imply that the five children who were the beneficiaries of the primary trust are not entitled to the unused and accumulated income of the primary trust during its continuance. The testatrix made no direction in respect to its disposal on the contingency which has occurred. All which she specified was that it was to be used for their education and maintenance " if necessary." Events have

proved that such use was not necessary. It follows, therefore, that the manner of its distribution must correspond with that adopted in any case where no valid direction respecting it is contained in the will, namely, by payment to those presumptively entitled to the next eventual estate. (Real. Prop. Law, § 63, *Matter of Friday,* 148 Misc. 899, 900; *Matter of Meyer,* 140 id. 1, 4; *Matter of Burroughs,* 155 id. 237, 241, and authorities cited.) These persons are all five children of the testatrix. (*Matter of Kohler,* 231 N. Y. 353, 376; *Cochrane* v. *Schell,* 140 id. 516, 537; *Matter of Doherty,* 227 App. Div. 265, 268.)

It follows that since the primary life estate is now terminated, the income accumulated during its continuance is presently payable to testatrix's five children in equal shares. Four-fifths of the principal of the primary trust must be employed in erecting the four several trusts for those who are still minors, one-tenth thereof is to be used in erecting the secondary trust for Margaret, and the final one-tenth is payable to her outright.

Counsel apparently experience some difficulty in reconciling the directions of the two quoted paragraphs respecting the period of duration of the secondary trusts. The direction in item fifth is to the effect that these trusts shall end upon the attainment of majority by the youngest child " and the payment to said child of his * * * portion of my estate *as above directed."* Obviously this is a statement in the conjunctive and not the disjunctive. The previous directions to which reference is made, are that one-half of its share shall be paid to each child on attaining majority, and the balance on attaining the age of thirty. Full effect cannot be given to the direction unless it be held that the several trusts shall continue in effect until the youngest child reaches thirty except in so far as they are automatically terminated by compliance with the previous direction that the remaining half of their respective principal funds shall vest in the possession of the several older children as they attain that age.

On the question of commissions, *Matter of Hunt* (121 App. Div. 96, 102) is directly in point. Up to the time when Margaret became of age, the trust was purely an executorial one in which single commissions only were allowable. As to the portions of the principal which went to form the secondary trusts, a severance of duties was inevitable, which entitled the fiduciaries to recompense in the second capacity. (See, also, *Matter of Abrahams,* 136 Misc. 538, 546; *Matter of Halbert,* 141 id. 181, 183 *et seq.*) The fiduciaries, in so far as they have not heretofore received them, are, therefore, entitled to full executorial commissions on the corpus of the primary trust, and to commissions as trustees for receiving the principal

sums composing the secondary trusts. They are not entitled to any commissions as trustee's on the portion of the principal of the primary trust which was payable to Margaret outright on attaining her majority. The fact that physical division of the principal sums of the secondary trusts has not yet been made, does not vary their rights to commissions in the capacity of trustees. *(Laytin v. Davidson,* 95 N. Y. 263, 266; *Matter of Crawford,* 113 id. 560, 568, 569; *Matter of Abrahams,* 136 Misc. 538, 546, 547.)

Enter decree on notice.