In the Matter of the Accounting of CITY NATIONAL BANK OF BINGHAMTON, as Administrator with the Will Annexed and as Trustee under the Will of FREDERICK R. EDWARDS, Deceased.

Surrogate's Court, Broome County, April 19, 1950.

*John H. McKinney* for administrator and trustee, petitioner.

*Prescott D. Perkins* for A. Louise Edwards and others, respondents.

*G. Mead Willsey* and *Jack W. Hummer* for Lewis M. French, as administrator *c. t. a.* of Olivia M. Edwards, deceased.

PAGE, S. In this proceeding the only issue is as to the construction of paragraph " Third " of the testator's will, as this paragraph may be affected in its bearing and effect by other paragraphs thereof. The practical question involved is the disposition of the remainder of a fund of $10,000 which was, until her death, February 17, 1949, treated and administered as a trust for the benefit of the testator's widow, Olivia M. Edwards. Paragraph " Third " of the will, together with the other paragraphs contended to have a bearing upon its construction, reads as follows:

" Second. I give and bequeath unto my wife, Olivia M. Edwards, the sum of two hundred dollars.

" Third. I give and bequeath unto my executor and trustee hereinafter named, in trust, the sum of ten thousand dollars, said sum to be kept invested as he may deem best, and the use, income and profits thereof to be paid to my wife, Olivia M. Edwards, at such times as may be most advantageous, and at least semiannually, and if at any time said income and profits of said sum of $10,000, shall not be sufficient for the personal and individual care, support and maintenance of my said wife, then and in that event, my said executor and trustee may use such portion of said principal sum as he may deem necessary for that purpose.

" Fourth. I give and bequeath unto my said wife, Olivia M. Edwards, the entire use of all my household goods and furniture during her life.

" Fifth. I give and bequeath unto my son, Harry Edwards, the income and profits of the sum of three thousand dollars, the same to be paid to him annually for a period of ten years from the date of my decease, the said principal sum of $3,000 then to pass to my residuary estate. * * *

" Seventh. I give, devise and bequeath all the rest, residue and remainder of all my property, either real or personal, of whatever kind or nature, as follows: one-half thereof to my son, Harry Edwards, and one-half thereof to be divided among my grandchildren, share and share alike."

Personal circumstances of the testator at the date he executed the said will are as follows: The testator executed his will on January 25, 1926. Olivia M. Edwards was his fourth wife, to whom he had been married since October 10, 1902. Their respective ages were seventy-eight and sixty-five. There was no issue of decedent's fourth marriage and none of the others except the first. By his first marriage he had a son, Harry Edwards, forty-nine years of age at the date of the will. Harry Edwards had three children, all of whom were living on January 25, 1926. Olivia M. Edwards never had any children and her closest relatives at the date of the will were two sisters.

According to the account, the balance of the fund of $10,000 provided by paragraph " Third " of the will at the date of death of Olivia M. Edwards was $8,726.47. The contending sets of respondents are: (1) The group claiming under paragraph " Seventh " of the will, consisting of A. Louise Edwards, widow of Harry Edwards, deceased (he having survived his father but died March 7, 1930), and the three children of said Harry and A. Louise Edwards, viz., Frederick H. Edwards, Robert B. Edwards and Grace L. Edwards Pearson, and (2) the legatees of Olivia M. Edwards, deceased, represented by Lewis M. French, as her administrator c. t. a., she having left a last will and testament bequeathing the bulk of her estate to her two sisters, both of whom predeceased her leaving issue (nieces and grandnieces of Olivia M. Edwards).

The position taken by the legal representative of testator's widow is that the provision of paragraph " Third " of the will in legal effect, was an absolute bequest to her in the sum of $10,000, and must now be treated and disposed of as such. This contention is based on the interpretation of this paragraph to the effect that the testator intended to and did provide that the

entire income of the subject matter of the bequest would be hers without limitation as to time, with no disposition of corpus in favor of anyone other than his wife, thus bringing the provision in question within the rule which may be designated as the rule of *Hatch* v. *Bassett* (52 N. Y. 359). The rule, as it was stated in this case in 1873, is (p. 362), " A general gift of the income, arising from personal property, making no mention of the principal, is equivalent to a general gift of the property itself." In connection with the statement of this rule enunciated and followed in *Hatch* v. *Bassett* (*supra*), the court cited an earlier New York case *Paterson* v. *Ellis* (11 Wend. 259) together with some early English cases holding, in effect, that a gift of income of property without limitation as to time, and without " mention " of the principal or corpus (in the sense of providing any ultimate vesting thereof in anyone) operates as a gift of the property itself to the beneficiary of its income.

In maintenance of his position, the said administrator *c. t. a.* also relies on further recognition and support of the above-stated rule, including: *Matter of Allen* (111 Misc. 93); *Matter of Goldmark* (186 App. Div. 447); *Matter of Dibble* (76 Misc. 413); *Mott* v. *Richtmyer* (57 N. Y. 49); *Cammann* v. *Bailey* (210 N. Y. 19); *Locke* v. *Farmers' Loan & Trust Co.* (140 N. Y. 135); *Matter of Putnam* (112 Misc. 315); *Matter of Sackett* (201 App. Div. 58); *Matter of Ingersoll* (95 App. Div. 211), and *Matter of Harris* (138 Misc. 287).

Counsel for residuary beneficiaries (under paragraph " Seventh " of the will) very ably contends that this rule is in no way applicable to the present situation. This view is supported upon a series of cases contended to show that the original application of the rule has been, from time to time, greatly confined and restricted in New York and some other States until at present its function has come to be to serve only as a disposition of last resort where, otherwise, intestacy would result.

Cases cited by counsel for the residuary beneficiaries in support of this contention include: *Patterson* v. *Ellis* (11 Wend. 259, 298, *supra*); *Matter of Smith* (131 N. Y. 239, 246 [1892]); *Matter of Dewey* (153 N. Y. 63 [1897]); *Cammann* v. *Bailey* (210 N. Y. 19 [1913]); *Matter of Olmstead* (131 Misc. 238 [1928]); *Matter of Loomis* (154 Misc. 549 [1935]); *Matter of Cary* (154 Misc. 682 [1935]); *Matter of Barclay* (52 N. Y. S. 2d 815 [1944]); *Matter of Tubbs* (169 Misc. 914); *Matter of Ulman* (242 App. Div. 652); *Matter of Selner* (261 App. Div. 618), and *Matter of Cippola* (165 Misc. 498).

The cogent authorities in relation to the predominating importance of a residuary provision in a will as a bar to the application of the rule in *Hatch* v. *Bassett* (*supra*) are the above-cited *Loomis, Cary* and *Tubbs* cases (*supra*). Both the *Loomis* and *Cary* cases were before Surrogate WINGATE in Kings County in 1935. In both the consideration of this rule was to the effect that, since there would be no resulting intestacy, it would and could have no application because of the presence of a general residuary testate provision. If either of these cases had been appealed and affirmed by the Court of Appeals, the result would have, in all cases where a general residuary, "catch-all", disposition had been provided, been the establishment of a notable simplification of the rule of *Hatch* v. *Bassett* (*supra*). A Court of Appeals affirmance in either of these cases would have been fully determinative of the present issue.

But, since we have no such authority in New York, it becomes necessary to examine cases involving the rule exclusive of these identified with the pioneering effort of Surrogate WINGATE to blaze a new trail as exemplified in the *Loomis* and *Cary* cases (*supra*).

A frequently quoted statement of the rule's function and recognized scope of operation was made by Senator Edmonds in 1833 in the case of *Paterson* v. *Ellis* (*supra*, p. 298) as follows: " It is also a rule of law that a devise of the interest or of the rents and profits is a devise of the thing itself, out of which that interest or those rents and profits may issue. [Citing authorities.] The rule, however is to be understood with some limitations. Where the intention of the testator to give only the use, is clear, manifest and undisputed, the rule must yield to the stronger force of the intention; but where it is *doubtful* whether the use only or the absolute ownership was intended to be given, the rule has been allowed to have a controlling effect. It is by [*sic*] means clear that in the case before us the use only was devised. If there is any doubt, it is whether the ownership was not intended to be given, and the rule to which I have adverted, comes with great propriety to our aid in solving the question." (Emphasis supplied.)

The above-quoted commentary, made in a case where the alternative to applying the rule would not have been intestacy, there having been a testate residuary provision, seems to have been judicially regarded as the most dependable guide in the application of the rule as to a general gift of income without any express disposition of principal. For example, see *Locke* v. *Farmers' Loan & Trust Co.* (140 N. Y. 135, *supra*), wherein (p. 146) Judge

FINCH refers with approval to this earlier elucidation of criteria determinative of the applicability of the rule. No later appellate case in New York has been found tending to indicate any reason to suppose that the criterion stated in *Paterson* v. *Ellis* (*supra*) is any less valid today than in 1833.

Are there valid reasons for concluding that in the present instance we are left in doubt as to the testator's intention?

Counsel for the residuary legatees takes the position that there is no reasonable basis of any doubt that the sole purpose of the testator was to provide an income on the principal of $10,000 for his widow's life benefit with a power to invade principal in case the trustee in his discretion might deem her necessitous of better support than could be derived from the income alone. He calls attention to several considerations tending to maintain this contention on behalf of the residuary beneficiaries, among which are:

(1) In construing ambiguous wills courts have a right and it is their duty to consider testators' surrounding circumstances at the time they executed their wills. In this case these circumstances include the fact that the testator had no child by his wife, Olivia M. Edwards, but he had a son by his first wife; this son had three children; Olivia M. Edwards had no relatives closer than two sisters. These are assigned as circumstances tending to show that it would not be probable that a construction of the will favorable to the widow's estate would be in accord with the testator's intention. But this view is to be regarded as modified by some countervailing observations. At the date of the will, testator was seventy-eight years of age; he had been married to his fourth and last wife longer than to all the other three put together; she was quite a number of years younger than he. Under these circumstances, it is somewhat logical to infer that he might have contemplated that she would be likely to outlive him and live up the modest amount of $10,000. He expressly made this possible. Having made other provision for his son, it might well be, if he thought at all about the question as to the eventual disposition of any remainder of the $10,000 that might be on hand at his wife's death, that he contemplated that it would be all right with him that it go in accordance with her will or by intestate succession to her relatives. This alternative view of the bearing of testator's personal circumstances is accentuated, as will be observed, by considering it in conjunction with the interpretation to be gathered from the "four corners" of the will in the light of well-established principles.

(2) The testator set up the provision for his wife in the form of a trust, thus indicating he never intended an outright gift. However, this consideration is of little or no import because of the authorities by which it is firmly established that the form of a trust and the application of the rule are not mutually exclusive, but entirely consistent with each other. (For example, see comment of the court in *Locke* v. *Farmers' Loan & Trust Co.,* 140 N. Y. 135, 147, *supra,* and *Matter of Ingersoll,* 95 App. Div. 211, 212, *supra;* which are only two examples of innumerable authorities to the same effect. For an extensive assembly of citations of New York and a number of other States on this point, see *Carmany Estate,* 357 Pa. 296, Note 174 A. L. R. 319, 334–335.)

(3) The provision for his wife made by the testator was made solely for the purpose of her *support.* The contended implication of this is that, since a deceased person no longer needs any support, the testator's intent must be taken to have been that, should any of the $10,000 remain at her death, it would devolve according to the residuary provision contained in his will. It is true that, at first blush, the observation that deceased persons can no longer be benefited by income or profits does seem to provide a basis of implication that, where no specific limitation is stated, there is an implied limitation to the life of the beneficiary. But, opposed to this is the implication inherent in or derived from the ancient ecclesiastical practice of referring to clerical appointments as " livings " and the custom originating in England of designating the corpus of property in terms of its yield. If the implication based on income's only possible enjoyment being limited by the life of the donee thereof had been regarded as predominant, the rule would never have been developed. Moreover, the inference to be derived from the words, " care [and] support ", as urged by the residuary people herein, is not in line with authorities. The rule of *Hatch* v. *Bassett* (52 N. Y. 359, *supra*) has been applied in many instances where, in making a gift of income, mention was made that it was for the beneficiary's care, support, maintenance, education, etc. The understanding derivable from such language is an expression of motive rather than a condition appertaining to the gift. (*Matter of Dibble,* 76 Misc. 413, 415, *supra*; see, also, *Crain* v. *Wright,* 114 N. Y. 307.)

(4) Since the fund set up under paragraph " Third " of the will has, with the widow's acquiescence, been treated and administered as a trust limited by her life, this amounts to a practical construction of the provision of paragraph " Third " of the will

which has been in operation for many years, and the representative of the widow's estate is, therefore, estopped to question this practical construction of the will. It is, of course, true that where parties change their positions in reliance upon a nonjudicial construction of a will or other instrument as expressed or acquiesced in by parties holding opposed interests that this gives rise to equitable considerations of which courts take cognizance. But here there is no basis for an estoppel. None of the parties interested on either side has changed his position. (See previous decision in this case, viz., *Matter of Edwards,* 196 Misc. 997. See, also, *Matter of Feldhus,* 165 Misc. 122, and cases there cited.)

(5) The testator's intent in relation to paragraph " Third " of the will, that he thought he was limiting his widow to an equitable life estate, is demonstrated by considering the preceding paragraph " Second ", by which he provided an outright bequest for the benefit of his wife. This shows he knew how to have likewise made an outright bequest of the $10,000 mentioned in paragraph " Third " had such a disposition of this amount been his intention. But the bearing of this point in the contention submitted on behalf of the residuary legatees is essentially the same as in relation to the circumstance that, in making his main provision for his wife, the testator prescribed the form of a trust. The testator's plainly apparent purpose in paragraph " Second " was to provide his wife, in the event that she became his widow, with a small amount of ready cash for her temporary convenience. This is perfectly consistent with his being equally concerned with, primarily, endeavoring to assure that the main amount he desired to allocate for her benefit be safeguarded against whatever risk there might be that she might invest it inadvisedly and thereby lose some or all of it.

(6) The testator's intent to provide only an equitable life use for his wife is placed beyond all question because of his having incorporated a residuary paragraph in his will. This, of course, is the main basis of contention in favor of the position of the residuary legatees. It is supported by the above-cited *Loomis, Cary* and *Tubbs* cases. It is true that the residuary paragraph, " Seventh ", does tend to show that, at least, it could be that the testator had contemplated that if, at his wife's demise, there might be anything left of the $10,000 bequest, it would fall into the residuary. But, there is doubt inherent also in this consideration. Neither paragraph " Third " nor the residuary paragraph specifically relates to the possible remainder over of the $10,000 bequeathed by paragraph

" Third ". Paragraph " Third " contains no statement similar to the provision the testator inserted in paragraph " Fifth " for the benefit of his son and which is identical except for its prescribing a definite term and specifically providing that the corpus eventually fall into the estate's residuum. There was a purpose for the residuary provision entirely aside from its being designed to take care of any remainder over of the $10,000 bequeathed in paragraph " Third " of the will. Moreover, the *Loomis, Cary* and *Tubbs* cases cited in support of the potency and effect of a general residuary provision lack validation upon appeal. They appear to be mavericks. (See *Carmany Estate,* 357 Pa. 296, *supra,* Note, 174 A. L. R. 319, 362, where these cases are digested as comprising a " minority rule ".) Countervailing authorities, referred to *infra,* support the application of the general rule in cases where there is a basis for its application although they are characterized by the presence of a general residuary disposition.

Against this series of considerations relied on by the residuary legatees, in their composite effect as well as singly, it is contended by counsel for the widow's estate that there are several considerations tending to show that it is just as probable and, considering the qualifications applicable to the various considerations advanced by counsel for the residuary legatees, even more probable that the testator never envisaged or contemplated any part of the $10,000 provided in paragraph " Third " of the will as being for the use or benefit of anyone other than his wife.

It is contended that this probability is accentuated by internal evidence that the will was drawn by an attorney. The will was witnessed and has the appearance of having been drafted by a lawyer. From this it is to be presumed that the attorney-draftsman was familiar with legal requirements in relation to testamentations, including the rule here in question. This presumption tends quite strongly to support the contention that, if the testator meant to obviate the application of the rule, his draftsman was competent to have accomplished this purpose and would have done so.

It is further contended that the well-known canon of construction to the effect that a testator's intent must be gathered from the will as a whole is peculiarly applicable here. In this connection, the observation is made that paragraph " Fourth " bequeathed " the entire use of all my household goods and furniture *during her life* ", thus indicating that, when he wished to make a limitation for life, he knew how to accomplish that purpose. It is also pointed out that, in paragraph " Fifth ",

the testator bequeathed the " income and profits " of a fund of $3,000 to his son " for a period of *ten years* from the date of my decease, the said principal sum of $3,000 *then to pass to my residuary estate* ", thus, again, indicating that the testator, when he intended a limitation of time, knew how to make definite provision accordingly, and, when he desired to specifically provide for the disposition of a remainder, he knew how to do so definitely and unquestionably. (Emphasis supplied.)

It is firmly established that variant modes of expression as found in a will give rise to the inference that diverse dispositions accordingly were intended. Authorities by which this principle of construction is strongly supported include: *Matter of Corlies* (150 Misc. 596 [1934]); *Matter of Carroll* (153 Misc. 649 [1934], mod. 247 App. Div. 11 [1936], motion for leave to appeal denied 271 N. Y. 636 [1936]) and *Matter of Crespi* (158 Misc. 383 [1936]). It appears that the application of the principle exemplified in these authorities is all the more in order in the case of a will drawn by an attorney. Such a will should be given a stricter construction than if a layman had prepared it, especially insofar as technical terms and nomenclature of the profession are concerned.

As a result of the careful consideration we have given to the " pros and cons " as to the testator's intent with respect to paragraph " Third ", particularly as it may have been intended by the testator to be affected by paragraph " Seventh " of the will, the conclusion is found to be inescapable that the testator's true intent in relation to the eventual complete devolution of the fund here in question is far from clear and is characterized by grave doubt. We can discover here no predominant determinant of the testator's intent. The basis of doubt in the present case is as substantial as it was in other cases in which the rule of *Hatch* v. *Bassett* (52 N. Y. 359, *supra*) was applied and of which we must take judicial cognizance as precedents. The conclusion follows that, unless the above-quoted formula stated by Senator EDMONDS in *Paterson* v. *Ellis* (11 Wend. 259, *supra*) has been abrogated, we have in the present instance a situation to which it definitely is applicable.

The only alternative would be a speculative surmise as to whether the affirmative or the negative line of reasoning as to the testator's intent with respect to the quantum he bequeathed in paragraph " Third " is dominant. The rule of *Hatch* v. *Bassett* (*supra*) was evolved to resolve just this type of problematical uncertainty. As was stated in the case of *Kingsland* v. *Rapelye* (3 Edw. ch. 1, 6): " " This intention [testamentary

intent] has sometimes been called the law of the instrument; sometimes the pole-star; but, in taking it for a guide, courts submit to be bound by precedents and authorities in point and endeavor to follow it upon judicial grounds, and not by mere arbitrary conjecture: 2 Jarmin's ed. Powell on Devises, 431, 434.''

A selection of authorities showing that, in cases of doubtful testamentary intent, the potency and applicability of the rule has held its own right down to the present time. may very well include: *Jennings* v. *Conboy* (73 N. Y. 230 [1878]); *Locke* v. *Farmers' Loan & Trust Co.* (140 N. Y. 135 [1893], *supra*); *Matter of Dibble* (76 Misc. 413 [1912], *supra*); *Guaranty Trust Co.* v. *Cutting* (130 Misc. 856 [1927]), and *Matter of de Varona* (274 App. Div. 303 [1948], affd. 299 N. Y. 726).

As previously observed, the position of the residuary group of respondents herein is based on a series of cases primarily consisting of *Matter of Loomis* (154 Misc. 549, *supra*), *Matter of Cary* (154 Misc. 682, *supra*) and *Matter of Tubbs* (169 Misc. 914, *supra*). (*Matter of Barclay,* 52 N. Y. S. 2d 815, *supra,* is distinguishable because in that case there was a limitation of time provided, viz., the length of time it would take to consume $2,000 at the rate of $20 per month.) These cases hold that, given a general residuary provision, *ipso facto,* the rule has no application. Opposed authorities of the same grade, viz., Surrogates' Courts, are *Matter of Dibble* (*supra*) and *Matter of Putnam* (112 Misc. 315, *supra*) decided respectively by Surrogate FOWLER in 1912 and Surrogate SLATER in 1920. These latter two cases are '' on all fours '' with the present situation and are strongly reasoned cases to the effect that the rule is applicable despite the factor that, had the rule been rejected, the testator would not, because of the existence of a general residuary provision, have died intestate.

Thus we see that we have Surrogates' Courts diametrically opposed as to whether the rule is or is not applicable in cases where there is a '' residuary clause ''. The *Dibble* and *Putnam* cases (*supra*) are based on and, instead of being modifications of, are directly in line with the most frequently cited State-wide authorities such as *Jennings* v. *Conboy* (*supra*) and *Locke* v. *Farmers' Loan & Trust Co.* (*supra*). It can safely be said that the *Dibble* and *Putnam* cases are squarely within the pattern of authorities of the State of New York in relation to the rule here in question, while the *Loomis* and *Cary* cases (*supra*) and those of their type, although argued to be distinguishable, are, nevertheless, departures from the well-established synthesis of New York authorities.

Thus we also can see that, on the state of the authorities as we find them in New York, a court of original jurisdiction, in determining such an issue of law as is presented herein, must be inclined to follow such authorities as *Jennings* v. *Conboy* and *Locke* v. *Farmers' Loan & Trust Co.* (*supra*) in the same manner that these cases were regarded as authorative and followed in the *Dibble* and *Putnam* cases (*supra*).

If, similarly, there is any more recent and authoritative case of our court of last resort, its effect would be to conclusively settle our present question. It appears that *Matter of de Varona* (*supra*) is such a case. It dealt with an *inter vivos* trust accompanied by an alternative residuary testamentary disposition, a situation the same as was before the courts in *Locke* v. *Farmers' Loan & trust Co.* (*supra*). It is not apparent that there is any fundamental basis of distinguishment of the present case. Its elements in common with both *Locke* v. *Farmers' Loan & Trust Co.* and the *de Varona* case are a gift of income without limitation as to time and with no dispositive mention of the principal, given in the form of a trust and involving the same special feature that there is no alternative of intestacy because of the existence of a testate residuary provision. The canon against intestacy is not a determining consideration herein any more than it was in those other cases. The *de Varona* case was decided in Supreme Court on the report of an Official Referee. Because the gift of income, being by way of an *inter vivos* trust, was nontestamentary, the Supreme Court by-passed the question of the applicability of the rule here in question. The trial court determined that the settlor's dispositions of future income were in violation of the Statute against Perpetuities. For reasons which are of no concern to us here, the Appellate Division found that there had been no violation of the Rule against Perpetuities. It gave predominant effect to the rule of *Hatch* v. *Bassett* (*supra*). This determination was unanimously affirmed upon appeal to the Court of Appeals.

Likewise, our determination of the present issue of construction, involving as it does the rule of *Hatch* v. *Bassett* (*supra*), if it is to be in harmony with judicial authority as firmly established in New York, must be that the testator's widow, Olivia M. Edwards, died possessed of title to the remainder of the fund bequeathed by paragraph " Third " of the will. This remainder, therefore, became and is an asset of her estate.

Settle decree accordingly by stipulation or upon notice.